CHRISTOPHER EVANS *v.* TIGER CLAW, INC., ET AL.
(AC 33618)

Lavine, Alvord and Foti, Js.

Argued December 4, 2012—officially released March 5, 2013

*Sid M. Miller*, for the appellant-appellee (plaintiff).

*Taryn D. Martin*, with whom, on the brief, was *Robert A. Ziegler*, for the appellees-appellants (named defendant et al.).

ALVORD, J. The plaintiff, Christopher Evans, appeals from the judgment of the trial court, rendered after a trial to the court, denying his claim for hourly wages allegedly due from the defendants, Tiger Claw, Inc., David Hartmann, David Martel and Donald Martel.[1] On appeal, the plaintiff claims that the court improperly concluded that the doctrine of res judicata precluded the recovery of those wages because of a prior determination by a wage enforcement agent for the department of labor. The defendants cross appeal from the judgment, claiming that the court improperly (1) awarded the plaintiff $10,027.26 for unpaid commissions and (2) found the individual defendants liable for the amounts awarded to the plaintiff. We affirm the judgment of the trial court in part and reverse in part.

The following facts were found by the court or are not disputed. Tiger Claw, Inc., was a start-up company when the plaintiff began working for the corporation in January, 2003. The individual defendants are corporate officers and hold various managerial positions within the company. Tiger Claw, Inc., manufactures hidden deck fasteners for the construction industry, and the plaintiff was hired to sell the fasteners and was compensated on a commission basis. Shortly after he joined the company, the plaintiff was asked and agreed to perform other administrative duties to be compensated at an hourly rate. According to the plaintiff, he and the defendants agreed that his hourly wages and his first $10,000 in commission earnings would be withheld and invested in shares of stock of Tiger Claw, Inc. After the

---

[1] The administrator of the unemployment compensation act was also named as a defendant but is not a party to this appeal. We therefore refer in this opinion to Tiger Claw, Inc., David Hartmann, David Martel and Donald Martel, collectively, as the defendants.

plaintiff had accumulated $10,027.26 in sales commissions, which was set aside in a "stock fund," he was paid commissions for subsequent sales that he made and received 1099 forms for that income.[2] As of the date of trial, $10,027.26 was the total amount set aside in the stock fund.[3] The plaintiff never was paid for the hourly administrative work he did between January, 2003, and April, 2005.

The plaintiff ceased doing noncommission, hourly administrative work in March, 2005. By letter dated April 7, 2005, the plaintiff was notified that his "relationship with Tiger Claw, Inc., [was] terminated." On October 13, 2006, the plaintiff filed a complaint with the department of labor for unpaid wages totaling $191,966.91. After an investigation, Blair F. Bertaccini, the wage enforcement agent, determined that certain costs had been deducted improperly from one of the plaintiff's commission checks and that the plaintiff was owed $3603.67 in unpaid wages. The plaintiff was unwilling to resolve his claim for that amount, and the complaint was withdrawn. On August 13, 2007, he commenced the present action against the defendants.

The plaintiff's operative complaint alleged that the defendants (1) failed to pay him hourly and commission wages and/or the shares of stock to which he was entitled[4] and (2) obtained the plaintiff's property, i.e., wages and/or stock, by false pretenses. The defendants filed special defenses alleging that the plaintiff's claims were

---

[2] The 1099 forms named the employer as Tiger Claw Hidden Deck Fasteners, Inc., but the address and tax identification number were those of the defendant, Tiger Claw, Inc. Hartmann testified that they were doing business as Tiger Claw Hidden Deck Fasteners, Inc., but that the legal name of the corporation was Tiger Claw, Inc.

[3] The purchase price per share of stock never had been established between the parties.

[4] The plaintiff abandoned his specific performance claim for stock during the trial.

barred by the statute of limitations; General Statutes § 52-596; and by the doctrine of res judicata.[5] Following a six day trial, the court issued its memorandum of decision on April 27, 2011. Although the court rendered judgment in favor of the plaintiff, it limited his recovery for unpaid hourly wages to $3603.67, which was the amount Bertaccini recommended to resolve the wage claim filed by the plaintiff with the department of labor. The court held that the doctrine of res judicata precluded any further recovery by the plaintiff for unpaid hourly wages. The court added $10,027.26 to that award, however, representing the sales commissions set aside for the purchase of corporate stock, for a total recovery of $13,630.93, plus taxable costs.[6] This appeal and cross appeal followed.

I

PLAINTIFF'S APPEAL ON RES JUDICATA CLAIM

The plaintiff claims that the court improperly concluded that Bertaccini's investigation of the plaintiff's wage complaint filed with the department of labor precluded any further recovery by the plaintiff for hourly wages. The plaintiff argues that the investigation, conducted pursuant to General Statutes § 31-76a, did not bar his claim for unpaid wages in this action under the doctrine of res judicata. The defendants argue that

---

[5] The defendants additionally filed another special defense alleging that the plaintiff's claims were barred by the doctrine of collateral estoppel, but that special defense was stricken by the court, and the defendants have not challenged that ruling.

[6] In a subsequent articulation, the court clarified how it calculated the plaintiff's award of damages: "[1] $3603.67 is due the plaintiff as a result of the failure to pay the plaintiff wages as found by the [d]epartment of [l]abor after it applied the statute of limitations ([§] 52-596). [2] $10,027.26 is due the plaintiff which represents the fund of accumulated commissions earned by the plaintiff which fund was to be used to purchase stock in Tiger Claw, Inc., which claim for stock was abandoned by the agreement of the parties during the course of the trial."

Bertaccini's report was the determination of an administrative tribunal, that the plaintiff had sufficient opportunity to litigate his claims in that forum and that any adverse decision by that tribunal could have been appealed pursuant to the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. We agree with the plaintiff and, accordingly, reverse that part of the trial court's judgment.

"The doctrine of res judicata holds that an existing final judgment rendered upon the merits without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. . . . If the same cause of action is again sued on, the judgment is a bar with respect to any claims relating to the cause of action which were actually made or which might have been made." (Internal quotation marks omitted.) *Powell* v. *Infinity Ins. Co.*, 282 Conn. 594, 600, 922 A.2d 1073 (2007). The applicability of the doctrine of res judicata presents a question of law subject to plenary review. *Stein* v. *Horton*, 99 Conn. App. 477, 481, 914 A.2d 606 (2007).

Under certain circumstances, the determination of an administrative tribunal will have res judicata effect with respect to any subsequent claims made by a party to that agency determination. "As a general proposition, the governing principle is that administrative adjudications have a preclusive effect when the parties have had an adequate opportunity to litigate. . . . [A] valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court." (Citations omitted;

internal quotation marks omitted.) *Lafayette* v. *General Dynamics Corp.*, 255 Conn. 762, 773, 770 A.2d 1 (2001). An administrative tribunal's decision is not entitled to res judicata effect in subsequent proceedings between the parties, however, if the initial decision was not subject to judicial review. "[W]ithout the availability of judicial review, neither the decision of an administrative agency nor that of a court is ordinarily entitled to be accorded preclusive effect in further litigation." *Convalescent Center of Bloomfield, Inc.* v. *Dept. of Income Maintenance*, 208 Conn. 187, 201, 544 A.2d 604 (1988).

In the present case, the plaintiff filed his initial wage claim with the department of labor on October 13, 2006. The matter was assigned to Bertaccini, who conducted an investigation pursuant to § 31-76a.[7] Bertaccini testified at trial and described the administrative process for reviewing the plaintiff's wage claim. He stated that he was authorized by statute to investigate a period of two years prior to the filing date of the claim to determine if any wages were due the plaintiff.[8] Accordingly, he did not consider any claimed wages earned prior to October 12, 2004.[9] After reviewing documents on the plaintiff's claim, Bertaccini sent a letter to the counsel

[7] General Statutes § 31-76a (a) provides in relevant part: "On receipt of a complaint for nonpayment of wages . . . the Labor Commissioner, the director of minimum wage and wage enforcement agents of the Labor Department shall have power to enter, during usual business hours, the place of business or employment of any employer to determine compliance with the wage payment laws . . . and for such purpose may examine payroll and other records and interview employees, call hearings, administer oaths, take testimony under oath and take depositions . . . ."

[8] General Statutes § 52-596 provides: "No action for the payment of remuneration for employment payable periodically shall be brought but within two years after the right of action accrues, except that this limitation shall be tolled upon the filing with the Labor Commissioner of a complaint of failure to pay wages pursuant to the provisions of chapter 558."

[9] Bertaccini testified that he did not investigate the plaintiff's claim that $10,000 in commission wages were withheld for the purchase of stock, concluding that such a claim was "not in our charge."

for Tiger Claw, Inc., advising him that a certain deduction had been made improperly from the plaintiff's commission check.[10] According to Bertaccini's calculations, the plaintiff was owed $3603.67. Although Tiger Claw, Inc., accepted Bertaccini's recommendation for resolving the matter, the plaintiff refused to accept a check for $3603.67 as payment in full for his claimed past due wages. Accordingly, Bertaccini closed the investigation and considered the complaint to be withdrawn.

Bertaccini's final report, indicating that the complaint was withdrawn, is dated March 22, 2007. On August 13, 2007, the plaintiff commenced the present action. The defendants argue that Bertaccini's determination was an adjudication by an administrative tribunal. They claim that the plaintiff could have requested a hearing and then appealed from any adverse decision pursuant to the UAPA. We disagree. Bertaccini's decision was not a final decision in a contested case and was not subject to judicial review under the UAPA.

"It is well established that the right to appeal an administrative action is created only by statute and a party must exercise that right in accordance with the statute in order for the court to have jurisdiction." (Internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Human Rights Referee*, 66 Conn. App. 196, 199, 783 A.2d 1214 (2001). "The UAPA grants the Superior Court jurisdiction over appeals of agency decisions only in certain limited and well delineated circumstances. . . . Judicial review of an administrative decision is governed by . . . § 4-183 (a) of the UAPA, which provides that [a] person who has exhausted all administrative remedies . . . and who is

---

[10] Certain work performed by Donald Martel had been deducted from the plaintiff's check. According to the letter, "[a]n employer is allowed to deduct costs incurred from the value of the sale from which the commission is calculated, not directly from the commission."

aggrieved by a final decision may appeal to the superior court . . . . A final decision is defined in § 4-166 (3) (A) as the agency determination in a contested case . . . . A contested case is defined in § 4-166 (2) as a proceeding . . . in which the legal rights, duties or privileges of a party are *required by state statute or regulation* to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held . . . . Not every matter or issue determined by an agency qualifies for contested case status." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Ferguson Mechanical Co.* v. *Dept. of Public Works*, 282 Conn. 764, 771–72, 924 A.2d 846 (2007). If the agency "was not under a statutory or regulatory mandate to conduct a hearing with respect to the plaintiff's allegations, there was no agency determination in a contested case." Id., 778.

The defendants argue that the plaintiff could have requested a hearing pursuant to General Statutes § 4-176e,[11] but declined to do so. The language in the statute is clear, however, and the defendants acknowledge in their brief, that the agency *may* order a hearing upon request but is *not required* to hold a hearing. Furthermore, neither the statutes pertaining to wage claim investigations nor the regulations promulgated by the department of labor require the department to hold a hearing under these circumstances.[12] Finally, the department's regulations defining a "contested case"

[11] General Statutes § 4-176e provides: "Except as otherwise required by the general statutes, a hearing in an agency proceeding *may* be held before (1) one or more hearing officers, provided no individual who has personally carried out the function of an investigator in a contested case may serve as a hearing officer in that case, or (2) one or more of the members of the agency." (Emphasis added.)

[12] The legislature has, elsewhere in our statutory scheme, expressly required that state agencies hold hearings. See, e.g., *Peters* v. *Dept. of Social Services*, 273 Conn. 434, 446 n.11, 870 A.2d 448 (2005) (listing seventeen statutes providing for hearings by state agencies).

compel the conclusion that Bertaccini's determination on the plaintiff's wage claim was not a final decision in a contested case. Section 31-1-1 of the Rules of Procedure for Hearings in Contested Cases to be Conducted by the Labor Commissioner provides in relevant part: "Contested case means a proceeding in which the legal rights, duties or privileges of a party are required by statute to be determined by the agency after an opportunity for a hearing or in which a hearing is in fact held *but does not include . . . investigatory hearings conducted pursuant to [Chapter] 558 of the General Statutes of Connecticut.*"[13] (Emphasis added; internal quotation marks omitted.) Regs., Conn. State Agencies § 31-1-1 (c).

For these reasons, we conclude that Bertaccini's decision did not have res judicata effect with respect to the plaintiff's wage claims in the present case[14] because the initial decision was not a final decision in a contested case that was subject to judicial review.[15]

## II

### DEFENDANTS' CROSS APPEAL ON AWARD FOR UNPAID COMMISSIONS

In their cross appeal, the defendants claim that the court improperly awarded the plaintiff $10,027.26 for

---

[13] Section 31-76a, which is the statutory authority for Bertaccini's investigation, is found in chapter 558 of the General Statutes.

[14] The trial court did not consider the plaintiff's claims for attorney's fees and other claimed damages as the result of its conclusion that res judicata barred any further recovery of unpaid wages. Those issues may be raised at the new trial ordered by this court.

[15] The defendants argue that we can uphold the trial court's decision on the ground that the statute of limitations, § 52-596, barred recovery of the plaintiff's wage claims in excess of the $3603.67 awarded by the court. We are not factfinders, and the plaintiff claimed in his reply to the defendants' special defenses that they were equitably estopped by their conduct from availing themselves of the time limitation. Further, there may be an issue as to when the plaintiff's cause of action arose. See *Burns* v. *Koellmer*, 11 Conn. App. 375, 388, 527 A.2d 1210 (1987) (holding that plaintiff's cause of action did not arise until defendant breached agreement by refusing to compensate plaintiff fully for her services).

unpaid commissions that had been withheld to purchase stock in the company. The defendants argue that given the clearly established two year statute of limitations period set forth in § 52-596, the court could not award the plaintiff $10,027.26 for unpaid sales commissions because those commissions were earned prior to October 12, 2004.

The defendants presented this same argument to the trial court in their posttrial brief. Donald Martel and Hartmann both testified at trial, under cross-examination, that the plaintiff never received the $10,027.26 that had been withheld to invest in corporate stock nor did the plaintiff receive any stock. The court, in its April 27, 2011 memorandum of decision, found that there was an agreement to purchase stock, that the plaintiff's earnings from his commissions were withheld in a "stock fund" and that $10,027.26 had accumulated in the stock fund as of the date of trial. The court further stated that although the plaintiff had abandoned his claim for the stock during the trial, he still claimed the amount held in the stock fund. In the court's articulation filed December 6, 2011, it stated: "$10,027.26 is due the plaintiff which represents the fund of accumulated commissions earned by the plaintiff which fund was to be used to purchase stock in Tiger Claw, Inc., which claim for stock was abandoned by the agreement of the parties during the course of the trial." No other references are made to the $10,027.26 claim or the stock fund in the memorandum of decision or the articulation. Further, although the court mentions the statute of limitations in its discussion with respect to unpaid hourly wages, no mention of § 52-596 is made in its discussion of the amount withheld in the stock fund.

Under these circumstances, we cannot conclude that the court's award of $10,027.26 to the plaintiff was improper. The record supports the court's findings that there was an agreement between the parties to withhold

the plaintiff's commissions in a stock fund and that neither the withheld $10,027.26 nor any stock was delivered to the plaintiff. Further, although the defendants argued that § 52-596 precluded the recovery of that sum, the court, nevertheless, rendered judgment for the plaintiff on that claim.[16] We will not presume that the court committed error.[17]

## III

## DEFENDANTS' CROSS APPEAL ON LIABILITY OF INDIVIDUAL DEFENDANTS

The defendants claim that the court improperly determined that the individual defendants, in addition to the corporate defendant, were liable to the plaintiff for unpaid wages. They argue that the plaintiff failed to plead sufficient facts or to provide evidence showing that any of the individual defendants had the ultimate responsible authority to set the plaintiff's hours of employment and to pay his wages, and failed to show that any of the individual defendants specifically caused the wage violation. Citing *Butler* v. *Hartford Technical Institute, Inc.*, 243 Conn. 454, 704 A.2d 222 (1997), the defendants claim that the plaintiff's failure to plead properly and to prove these elements requires a reversal

---

[16] The court may have determined that the statute was not applicable to the plaintiff's commissions. Section 52-596 provides in relevant part that "[n]o action for the payment of remuneration for employment payable periodically shall be brought but within two years after the right of action accrues . . . ." In light of the evidence presented at trial, the court may have found that the commissions were not "payable periodically." Moreover, the court may have determined that the defendants were equitably estopped from relying on the time limitation set forth in the statute or that the plaintiff's action accrued within the requisite two year period. See footnote 15 of this opinion.

[17] "We presume that the court considered the relevant factors. . . . The correctness of a judgment of a court of general jurisdiction is presumed in the absence of evidence to the contrary. We do not presume error. The burden is on the appellant to prove harmful error." (Citation omitted; internal quotation marks omitted.) *Fiallo* v. *Allstate Ins. Co.*, 138 Conn. App. 325, 335 n.2, 51 A.3d 1193 (2012).

of the judgment with respect to the individual defendants. We agree.

*Butler* v. *Hartford Technical Institute, Inc.*, provides guidance on this issue. In *Butler*, the commissioner of labor sought to collect unpaid overtime wages allegedly owed by a corporate defendant and its president to a former employee. Id., 455–56. Our Supreme Court held that the trial court properly determined that the president of the corporation was personally liable for the nonpayment of those wages as an "employer" within the meaning of General Statutes § 31-72,[18] notwithstanding the fact that the corporate defendant also was liable as an "employer" under that statutory provision. Personal liability under those circumstances is permitted "if the individual is the ultimate responsible authority to set the hours of employment *and* to pay wages *and* is the specific cause of the wage violation." (Emphasis added.) Id., 463–64.[19]

---

[18] General Statutes § 31-72 provides in relevant part: "When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive, or fails to compensate an employee in accordance with section 31-76k . . . such employee . . . may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court . . . . The Labor Commissioner may collect the full amount of any such unpaid wages . . . . In addition, the Labor Commissioner may bring any legal action necessary to recover twice the full amount of unpaid wages . . . and the employer shall be required to pay the costs and such reasonable attorney's fees as may be allowed by the court. The commissioner shall distribute any wages . . . collected pursuant to this section to the appropriate person."

[19] In *Butler*, the trial court found that the president was the individual in control of, and solely responsible for, all decisions with regard to wages. The trial court additionally found that the president told the former employee that she would have to work overtime and that she reported directly to the president. Her time cards had to be initialed by the president in order for her to be paid. Further, the trial court found that only the president could approve wage payments and that his refusal to pay overtime wages was the cause of the wage violation in failing to compensate the former employee properly. *Butler* v. *Hartford Technical Institute, Inc.*, supra, 243 Conn. 464–65.

In the present case, the plaintiff's operative complaint alleges that Hartmann: (1) represented himself as a partner of the Tiger Claw business, (2) was the business manager for the business, (3) was the chief executive officer of Tiger Claw, Inc., (4) hired the plaintiff as a commission salesman, (5) hired the plaintiff to perform administrative work, (6) offered to withhold the plaintiff's hourly earnings to purchase corporate stock for the plaintiff, (7) offered to invest $10,000 of the plaintiff's sales commissions in corporate stock and (8) failed to deliver the stock or account for the plaintiff's earnings. The allegations as to the other two individual defendants are similar, but less extensive. There are no distinct allegations that any of the individual defendants were solely responsible for the payment of the plaintiff's wages or that they controlled the plaintiff's hours. Further, no allegation is directed to any single defendant that he was the cause for withholding the stock or payment of the claimed wages and specifically caused the wage violation.

At trial, the plaintiff testified: "I was just supposed to keep track of my hours . . . to keep track of the stuff that I was doing." He further testified: "I was free to set my own hours, work my own schedule. . . . I worked as many or as few hours as I desired." He also confirmed that Tiger Claw, Inc., paid his commissions and expenses, and he was not paid personally by any of the individual defendants.

Donald Martel testified that the plaintiff "was working on his own, and he kept his own hours. But he worked whatever hours he felt he worked. It was no set time from eight to five, let's say. So we asked him if he . . . could keep track of his hours." Hartmann testified: "I couldn't control him. . . . I mean his sales skills were really—that compensated for, well, let us tolerate the fact that we couldn't control him. But the

hours, you know, as far as knowing when he was working, what he was doing, working to our schedules; no."

Our thorough review of the record reveals no testimony that contradicts the quoted testimony by the plaintiff, Hartmann and Donald Martel with respect to the defendants' lack of control over the plaintiff's hours. Further, there is no testimony or evidence that any of the individual defendants was solely responsible for the payment of the plaintiff's wages or that any one of them was the specific cause of a wage violation. Applying the holding in *Baker*, we conclude that there is no evidence in the record to support a finding that the individual defendants were personally liable, together with Tiger Claw, Inc., for the plaintiff's unpaid wages. Accordingly, we reverse that part of the trial court's judgment.

On the plaintiff's appeal, the judgment is reversed only as to the according of res judicata effect to the wage enforcement agent's determination of the plaintiff's wage claim and the case is remanded for a new trial on that issue. On the defendants' cross appeal, the judgment is reversed with respect to the liability of the individual defendants and the case is remanded with direction to render judgment in their favor. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.