******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CHRISTOPHER EVANS *v.* TIGER CLAW,
INC., ET AL.
(AC 38445)

Alvord, Prescott and Bear, Js.

*Argued March 15—officially released May 23, 2017*

(Appeal from Superior Court, judicial district of New
Haven, Licari, J. [motion to strike]; Corradino, J.
[motion to strike special defenses]; Hon. Robert I.
Berdon, judge trial referee [judgment; articulation];
Pittman, J. [judgment])

*Mariusz Kurzyna*, with whom, on the brief, was
*Peter Goselin*, for the appellant (plaintiff).

*Taryn D. Martin* with whom was *Robert A. Ziegler*,
for the appellee (named defendant).

*Opinion*

PER CURIAM. The plaintiff, Christopher Evans, appeals from the judgment, rendered after a trial to the court, denying his claim for hourly wages allegedly due from the defendant, Tiger Claw, Inc. (defendant).[1] On appeal, the plaintiff claims that the trial court erred (1) "in failing to apply or misapplying fundamental tenets of wage and hour law"; (2) "in applying an incorrect burden of proof"; and (3) "in finding that [the] plaintiff has not proved that [the] defendant failed to pay any wages to which [the] plaintiff was otherwise entitled." We affirm the judgment of the trial court.

The following facts were found by the court or are not disputed. The defendant was a start-up company when the plaintiff began working there in January, 2003. The defendant manufactured hidden deck fasteners for the construction industry. David Hartmann, David Martel, and Donald Martel were corporate officers and held various managerial positions within the defendant. The plaintiff was hired as a sales representative for a new line of deck fasteners and was compensated on a commission basis, with an agreement that his first $10,000 in commission earnings would be withheld and invested in shares of the company's stock. Because the defendant was just starting up and had little support staff, it was further agreed that if the plaintiff was called upon from time to time to perform administrative functions that were not sales related, the defendant would compensate the plaintiff on an hourly basis, based on time records submitted periodically by the plaintiff.

The plaintiff worked primarily as a sales representative from January, 2003 until April, 2005, calling customers, visiting wholesalers and retailers, attending trade shows, creating and editing promotional materials, and keeping track internally and externally of the market.[2] After the plaintiff had accumulated $10,027.26 in sales commissions, which was set aside in a stock fund, he was paid commissions for subsequent sales that he made and received Internal Revenue Service (IRS) Forms 1099 for that income.

The plaintiff submitted a record of time spent on administrative work to the defendant in February, 2003 for work performed in January, 2003. The plaintiff was not paid for the administrative work he performed in January, 2003, and he never demanded payment for that administrative work during his employment. The plaintiff did not submit any other records of time allegedly spent on administrative work until he stopped working for the defendant.[3] When it became clear that the plaintiff would be leaving in March, 2005, the plaintiff presented the defendant with more than two years of administrative time records for which he demanded compensation. The defendant disputed the plaintiff's entitlement to compensation for such administrative

time.

The plaintiff essentially stopped working for the defendant on March 16, 2005, and he resigned effective that date. On April 7, 2005, the defendant's counsel sent a letter to the plaintiff, officially terminating his employment. The defendant paid out all of his remaining earned commissions and reported on an IRS Form 1099 for the year 2005 that the plaintiff received $8861.49 for that year.

On October 13, 2006, the plaintiff filed a complaint with the state Department of Labor (department) for unpaid wages totaling $191,966.91. After an investigation, Blair F. Bertaccini, a department wage enforcement agent, determined that certain costs had been deducted improperly from one of the plaintiff's commission checks and that the plaintiff was owed $3603.67 in unpaid wages. The plaintiff was unwilling to resolve his claim for that amount, and he withdrew his complaint at the department. On August 13, 2007, the plaintiff commenced the present action against the defendant and against Hartmann and the Martels in their individual capacities.

The plaintiff's operative complaint alleged that the defendant, Hartmann, and the Martels (1) failed to pay him hourly and commission wages and/or the shares of stock to which he was entitled and (2) obtained the plaintiff's property, i.e., wages and/or stock, by false pretenses. The defendant, Hartmann, and the Martels filed special defenses alleging that the plaintiff's claims were barred by the statute of limitations articulated in General Statutes § 52-596 and by the doctrine of res judicata. Following a six day trial, the court, *Hon. Robert I. Berdon*, judge trial referee, issued its memorandum of decision on April 27, 2011. Although the court rendered judgment in favor of the plaintiff, it limited his recovery for unpaid hourly wages to $3603.67, which was the amount Bertaccini recommended to resolve the wage claim filed by the plaintiff with the department. The court held that the doctrine of res judicata precluded any further recovery by the plaintiff for unpaid hourly wages. The court added $10,027.26 to that award, however, representing the sales commissions set aside for the purchase of corporate stock, for a total recovery of $13,630.93, plus taxable costs.

The plaintiff appealed the judgment of the trial court claiming that "the court improperly concluded that the doctrine of res judicata precluded the recovery of those wages because of a prior determination by a wage enforcement agent for the department of labor." *Evans* v. *Tiger Claw, Inc.*, 141 Conn. App. 110, 112, 61 A.3d 533, cert. denied, 310 Conn. 926, 78 A.3d 146, 856 (2013). The defendant, Hartmann, and the Martels filed a cross appeal from the judgment, "claiming that the court improperly (1) awarded the plaintiff $10,027.26 for

unpaid commissions and (2) found [Hartmann and the Martels] liable for the amounts awarded to the plaintiff." Id. This court reversed the judgment "as to the according of res judicata effect to [Bertaccini's] determination of the plaintiff's wage claim" and remanded the case for a new trial on that issue. Id., 124. This court further reversed the judgment with respect to the personal liability of Hartmann and the Martels and remanded the case with direction to render judgment in their favor but affirmed the award of $10,027.26 in favor of the plaintiff and against the defendant for unpaid wages. Id.

On remand, the case was tried to the court, *Pittman, J.*, on the limited issue of whether the defendant failed to pay the plaintiff any other wages or commissions and, if so, what amount of compensation was due. Prior to trial, the plaintiff filed a motion in limine requesting that the court "limit any documentary or testamentary evidence that the defendant asserts shows the hours worked by or wages paid to the plaintiff and apply the burden-shifting framework set out in" *Anderson* v. *Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946),[4] and adopted by our Supreme Court in *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 828 A.2d 64 (2003). The court denied the motion without prejudice before trial "because there is currently an insufficient basis upon which to make such a decision."

At trial, the plaintiff presented evidence that he was entitled to additional compensation at an hourly wage for substantial administrative work he purportedly performed for the defendant. In particular, the plaintiff produced as evidence several spreadsheets that he represented were contemporaneous records of his daily "administrative hours" for the years 2003, 2004, and 2005. The defendant rebutted that evidence primarily through the testimony of Hartmann, who explained why the plaintiff's figures in his spreadsheets were not credible or why certain tasks listed by the plaintiff in his spreadsheets constituted sales work, compensable through his sales commissions, not administrative work. Hartmann stated on several occasions that he did not know what many of the tasks identified by the plaintiff were.[5] In addition, Hartmann stated that, although he conceptually understood what some of the listed tasks were, he did not know that the plaintiff actually performed those tasks or why he would perform them.[6] Finally, Hartmann testified that there were some tasks he knew that the plaintiff was performing despite being instructed not to do so.[7]

On August 6, 2015, the court issued its memorandum of decision, in which it concluded that "the plaintiff . . . failed to prove his entitlement to any additional compensation by a preponderance of the evidence . . . ." Although the court noted that "the plaintiff was

always considered an independent contractor, not an employee" by the parties, it assumed arguendo that the *Anderson* burden-shifting scheme for unpaid wages claims by employees applied to the case.[8]

The court found that the plaintiff's spreadsheets of his "administrative hours" were "not a contemporaneous record of the plaintiff's administrative work" and that "the number of 'administrative hours' reflected on them is not believable (and, in some instances, barely humanly possible), especially when coupled with the plaintiff's primary [forty]-hour-per-week job as a sales representative, a job he performed well, according to David Hartmann. These time records cast doubt upon the entire presentation of the plaintiff about his performance of any administrative work at all for the defendant." The court further found that, "with rare exception, the plaintiff was not directed by the defendant to do any of the administrative functions for which he finally submitted a demand. Rather from a review of the spreadsheets and an analysis of the evidence as a whole, particularly the plaintiff's own testimony, the court finds that the plaintiff busied himself with projects that he invented for himself which had only incidental value to the company.

"Although . . . Hartmann generously conceded that the plaintiff may have worked *some* compensable administrative hours on occasion, the court is not bound to accept such uncontradicted testimony. . . . Rather, despite the time records constructed by the plaintiff, the plaintiff's descriptions of the administrative time worked are so vague and sometimes contradictory that his account of his many hundreds of hours spent on administrative tasks simply does not ring true." (Citation omitted; emphasis in original; footnote omitted.)

As a result, the court concluded that "the plaintiff has not proved that the defendant failed to pay any wages or commissions to which the plaintiff was otherwise entitled. The absence of the compensation of which the plaintiff complains in this lawsuit is not evidence that the defendant withheld payments it knew or suspected that the plaintiff was owed for work he had performed. Rather, the court finds that the plaintiff either did not perform the hourly work claimed in the spreadsheets or that substantially all of the work he performed was in general or specific support of his own sales work, for which he received compensation not through an hourly wage but through commissions which were properly paid and reported." Because "the plaintiff . . . failed to prove his entitlement to any additional compensation by a preponderance of the evidence," the court rendered a judgment in favor of the defendant. This appeal followed.

At the outset, we observe that the plaintiff's issues on appeal rest on two faulty premises: the trial court

(1) found that he was an independent contractor and, as a result, (2) failed to apply, or misapplied, the *Anderson* burden-shifting scheme. As we previously stated, although the trial court noted that "the plaintiff was always considered an independent contractor,"[9] it assumed arguendo that the *Anderson* burden-shifting scheme applied to the plaintiff's claim and rejected his claim because he failed to meet his burden of proof. Accordingly, we also assume for the purposes of our analysis that the plaintiff was an employee and that the *Anderson* burden-shifting scheme applies to his case.[10] Because we conclude that the trial court properly applied the *Anderson* burden-shifting scheme and did not err in its conclusion that the plaintiff failed to prove his entitlement to additional compensation from the defendant, we reject the plaintiff's claims on appeal.

We first set forth the standard of review and legal principles that guide our analysis. "[T]he scope of our appellate review depends [on] the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Ravetto* v. *Triton Thalassic Technologies, Inc.*, 285 Conn. 716, 735, 941 A.2d 309 (2008).

Section 16 (b) of the Fair Labor Standards Act (act), 29 U.S.C. § 216 (b), and General Statutes § 31-72 create a civil cause of action for an employee to collect unpaid wages. In addition, § 11 (c) of the act, 29 U.S.C. § 211 (c), and General Statutes § 31-66 require employers to maintain records of all of their employees' hours and wages. In *Anderson* v. *Mt. Clemens Pottery Co.*, supra, 328 U.S. 680, the United States Supreme Court addressed the appropriate burden of proof in an action brought pursuant to §16 (b) when an "employee has proved that he has performed work and has not been paid in accordance with the [act]," but his employer has failed to maintain "proper and accurate records" of his wages and hours and, therefore, the amount of wages owed is uncertain. Id., 686–688. The court in *Anderson* concluded that it would be contrary to the remedial nature of the act and public policy to make the burden of proof an impossible hurdle for the employee, and, therefore, it enunciated a burden-shifting scheme, which our Supreme Court adopted in *Schoonmaker* v. *Lawrence Brunoli, Inc.*, supra, 265 Conn. 210. See *Anderson* v. *Mt. Clemens Pottery Co.*, supra, 686-88.

Under the *Anderson* burden-shifting scheme, when an employer has maintained proper and accurate records of an employee's wages and hours, the employee satisfies his burden of production by

requesting and producing those records. *Anderson* v. *Mt. Clemens Pottery Co.*, supra, 328 U.S. 687. "But where the employer's records are inaccurate or inadequate," the employee satisfies his burden of production "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Id. "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to [negate] the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result [is] only approximate." Id., 687–88.

Significantly, "*Anderson* merely imposes a shift in the burden of production, and not the burden of persuasion;[11] the ultimate burden of persuading the trier of fact remains with the employee." (Footnote in original.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, supra, 265 Conn. 241. The purpose of the *Anderson* burden-shifting scheme is simply to prevent an employer from complaining that "the damages lack the exactness and precision of measurement that would be possible had [it] kept records in accordance with the requirements of § 11 (c)." *Anderson* v. *Mt. Clemens Pottery Co.*, supra, 328 U.S. 688.

In the present case, the plaintiff failed to persuade the court that he in fact performed work for the defendant for which he was improperly compensated. Although evidence was produced by the plaintiff that he performed substantial administrative work for the defendant for which he should have been compensated through an hourly wage, the court did not credit that evidence. "It is well established that [i]t is within the province of the trial court, when sitting as the fact finder, to weigh the evidence presented and determine the credibility and effect to be given the evidence. . . ." (Internal quotation marks omitted.) *Ravetto* v. *Triton Thalassic Technologies, Inc.*, supra, 285 Conn. 728. We cannot conclude that the court's credibility determinations or its finding that the plaintiff did not perform work for which he was improperly compensated were clearly erroneous.[12]

The plaintiff, in addition to challenging the court's credibility findings, argues that the court's holding is in contravention of state and federal employment law. In particular, the plaintiff argues that the court improperly concluded that "[the] plaintiff's recorded work hours are not compensable because . . . [the] defendant had not 'directed' [the] plaintiff to perform that work." We agree that the standard under state and federal law is that "[i]f the employer knows or has reason to believe that the work is being performed, he must

count the time as hours worked." 29 C.F.R. § 785.12; see also 29 C.F.R. §§ 785.11 and 785.13; General Statutes § 31-71a (2) and (3); Regs., Conn. State Agencies § 31-60-11 (a). The plaintiff misapprehends, however, the court's ruling. The court did not conclude that the plaintiff was not entitled to compensation because he was not directed to perform the tasks listed in his spreadsheets. Instead, the driving force of the court's holding was its finding that the plaintiff's spreadsheets and testimony were not credible. It was because of this credibility determination that the court found that the plaintiff did not perform much of the work claimed in his spreadsheets and that, to the extent he actually performed certain tasks, he was properly compensated for them through his sales commissions, as they were sales related tasks. It was because of these factual findings that the court was not persuaded by a preponderance of the evidence that the plaintiff in fact performed work for the defendant for which he was improperly compensated. As a result, we cannot conclude that the court's ruling was in contravention of state and federal employment law.

The judgment is affirmed.

[1] Several additional parties were named as defendants in this action, but they have not participated in this appeal. We therefore refer to Tiger Claw, Inc., as the defendant in this opinion, and, where necessary, to the other defendants by name.

[2] Although the plaintiff claimed that he was hired for telephone sales only, and that all other sales functions were administrative in nature, the court rejected that characterization, concluding that "[t]he better evidence is that telephone sales calls were but one part of the job description, and that all parties understood this at the time."

[3] The plaintiff testified that, from time to time, he submitted other such time records to the defendant. Hartmann recalled the plaintiff submitting time records "a couple times" but could not say definitively whether the plaintiff submitted any additional time records. The court found that no such interim records were submitted.

[4] We note that *Anderson* was superseded by statute on other grounds. See 29 U.S.C. § 254 (a).

[5] For example, the plaintiff listed "SSP training" and "phone pad" as administrative tasks in his spreadsheet, and Hartmann testified that he did not know what either of those tasks were.

[6] For example, the plaintiff listed "R&D" as an administrative task in his spreadsheet, and Hartmann stated that, although he understood what research and development is, the defendant was not involved in research and development nor was he asked to participate in research and development for the company.

[7] For example, Hartmann testified that although the plaintiff occasionally was asked in his capacity as a sales representative to create or to edit sales promotional materials, the plaintiff would often continue to remake promotional materials without being asked to or after being asked to stop.

[8] The court further assumed arguendo that the defendant's record keeping was inadequate, which, as discussed subsequently in this opinion, is a relevant factor when applying the *Anderson* burden-shifting scheme.

[9] We observe that the plaintiff in his appellate brief states that "the parties agree that, while he was employed by [the] defendant, [the] plaintiff was treated as an independent contractor," although he argues that this label was a misclassification.

[10] At oral argument, the defendant agreed that the plaintiff should be treated as an employee for the purposes of the issues raised in this appeal.

[11] "We explored the well established distinction between the 'burden of production' and the 'burden of persuasion' in *Potter* v. *Chicago Pneumatic Tool Co.*, 241 Conn. 199, 235 n.26, 694 A.2d 1319 (1997). In *Potter*, we noted that: 'The phrase burden of proof is used in two ways. First, to refer to the

burden of persuading the [trier of fact] that a fact exists, and second, to refer to the burden of producing sufficient evidence to persuade the judge to allow the case or issue to go to the [trier of fact], viz., that a prima facie case exists. . . . The burden of persuasion creates a risk of an adverse decision on the merits by the [trier of fact], whereas the burden of going forward or producing evidence creates a risk that the judge will withdraw the case or an issue from the [fact finder].' " (Emphasis omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, supra, 265 Conn. 241 n.36.

[12] Although the plaintiff in his statement of the issues frames his third claim on appeal as challenging only the court's finding that he "has not proved that [the] defendant failed to pay any wages to which [the] plaintiff was otherwise entitled," in his brief, the plaintiff also challenges the court's finding that he submitted administrative time records only in February, 2003 and March, 2005. Even if we were to find in favor of the plaintiff on this claim, however, it would not alter our conclusion that the court did not err in its finding that the plaintiff failed to meet his burden of proof at trial. Accordingly, we need not address this claim on appeal. *Lashgari* v. *Lashgari*, 197 Conn. 189, 196, 496 A.2d 491 (1985) ("we need not address other issues raised on appeal if the trial court has correctly decided an issue that is sufficient to sustain the judgment" [emphasis omitted]); accord *Ottiano* v. *Shetucket Plumbing Supply Co.*, 61 Conn. App. 648, 652, 767 A.2d 128 (2001).

_____