******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# JACQUELINE RODRIGUEZ *v.* KAIAFFA, LLC, ET AL.
## (SC 20274)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.*

*Syllabus*

Pursuant to statute (§ 31-60 [b]), the Commissioner of Labor shall adopt regulations that carry out the purposes of the minimum wage laws, and such regulations shall entitle employers, as part of the minimum fair wage, to a tip credit by including gratuities in an amount equal to a certain percentage of the minimum fair wage per hour for persons, other than bartenders, who are employed in the hotel and restaurant industry and who regularly and customarily receive gratuities.

Pursuant further to a Department of Labor regulation (§ 31-62-E4), "[i]f an employee performs both service and non-service duties, and the time spent on each is definitely segregated and so recorded, the allowance for gratuities as permitted as part of the minimum fair wage may be applied to the hours worked in the service category," but, "[i]f an employee performs both service and non-service duties and the time spent on each cannot be definitely segregated and so recorded, or is not definitely segregated and so recorded, no allowances for gratuities may be applied as part of the minimum fair wage."

The defendants, K Co. and its single member, C, appealed from the trial court's order certifying for class action status an action brought by the plaintiff, who was employed at one of the six restaurants in Connecticut operated by the defendants under the name Chip's Family Restaurants. In addition to waiting tables, servers at the restaurants were required to perform "side work," such as cleaning tables and appliances, restocking, slicing lemons, and preparing food toppings. The plaintiff alleged in her complaint that the defendants violated Connecticut wage laws when they failed to pay their servers, during a certain time period, the minimum hourly wage mandated by § 31-60 (b) by unlawfully deducting a tip credit from the servers' wages for the time they spent on side work, which the plaintiff claimed was nonservice in nature under § 31-62-E4 of the regulations. The trial court granted the plaintiff's motion for class certification and certified a class consisting of all individuals employed as servers "at any Connecticut Chip's Family Restaurant" during a certain time period. In so doing, the court declined to define the terms "service" and "nonservice," as used in § 31-62-E4 of the regulations, and, instead, found that, regardless of whether the side work constituted a service or nonservice duty, the class members' claims were all the same, namely, that each server performed side work during every shift and was entitled to the full minimum wage because the defendants failed to segregate and record the time servers spent performing services and nonservice duties. The court specifically noted that the proposed class included several hundred servers employed at six different restaurants and that they shared the same claim, irrespective of variations in the type, amount, or manner of side work tasks performed by individual servers at each restaurant. Accordingly, the court concluded that each requirement for class certification—numerosity, commonality, typicality, and adequacy of representation—set forth in the applicable rule of practice (§ 9-7) had been satisfied and that the predominance and superiority considerations under the applicable rule of practice (§ 9-8 (3)) also had been met. Thereafter, the defendants appealed from the court's order granting class certification pursuant to the statute (§ 52-265a) permitting the Chief Justice to certify an interlocutory appeal involving a matter of substantial public interest. *Held*:

1. The defendants could not prevail on their claim that the trial court improperly declined to inquire into the merits of the plaintiff's legal theory and to decide that the tasks assigned as side work constituted service duties under § 31-62-E4 of the regulations in determining whether the commonality and predominance requirements for class certification had been met; the court should inquire into the merits of a case only to the extent necessary to ensure that a plaintiff has met the requirements of the

class action rules, and, in the present case, the defendants failed to demonstrate how the trial court's determining the meanings of "service" and "nonservice" would affect whether common issues predominate.

2. The trial court did not abuse its discretion in concluding that the four class certification requirements of Practice Book § 9-7 had been satisfied: the defendants did not challenge the trial court's finding that the numerosity requirement was satisfied by the proposed class of several hundred servers employed at the six restaurants; moreover, the commonality requirement was satisfied, as the defendants used a single, common side work policy that was applicable at all six restaurants, the evidence demonstrated an overarching policy of the servers' performing generally consistent side work tasks, and any factual variations in how servers at the different locations performed side work were likely to be insubstantial; furthermore, the adequacy of representation and typicality requirements were satisfied because the plaintiff asserted a cognizable claim against the defendants, namely, violations of Connecticut wage laws and regulations, and her standing in this case allowed her to typically and adequately represent class members with claims against the defendants.

3. The trial court did not abuse its discretion in concluding that the predominance and superiority requirements of Practice Book § 9-8 had been satisfied: common issues of law or fact predominated over questions affecting only individual members, as much of the proof necessary to establish the contested element of the plaintiff's claim, namely, whether the servers performed both service and nonservice duties, was apparent from the defendants' own admissions, and the plaintiff was not required to prove the precise nature of the servers' side work duties because, under the minimum wage laws, it is the employer's burden to establish that the servers were service employees who were subject to the tip credit; moreover, the trial court correctly determined that the plaintiffs could use representative testimony, rather than individual testimony, to prove that the tasks assigned as side work were nonservice in nature, as the evidence indicated that all servers were trained in a similar manner, the tasks assigned to servers were relatively uniform, and a common side work policy was used at all six restaurants, despite minor variations in the manner and frequency that individual servers may have performed certain tasks; furthermore, in light of this court's conclusion that the use of representative testimony was proper, the trial court correctly determined that a class action was superior to other available methods for the fair and efficient adjudication of the controversy, especially as it would promote judicial efficiency and provide many individuals, who likely would not bring such a claim, an opportunity for relief.

4. There was no merit to the defendants' claim that the trial court improperly defined the class by referring to "Connecticut Chip's Family Restaurant," which is not a legal entity, in its certification order; the court used a term that clearly encompassed all six restaurants operated by the defendants, allowing for individual servers to easily recognize whether they qualify as class members based on their employment at a Chip's restaurant and for their eligibility to be readily ascertained and definitively verified.

Argued January 14—officially released October 6, 2020**

*Procedural History*

Action to recover damages for the defendants' alleged violations of Connecticut wage laws and regulations, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the case was transferred to the judicial district of Hartford, Complex Litigation Docket; thereafter, the court, *Schuman, J.*, granted the plaintiff's motion for class certification, and the defendants, upon certification by the Chief Justice pursuant to General Statutes § 52-265a that a matter of substantial public interest was at issue, appealed to this court. *Affirmed.*

*Jeffrey J. White*, with whom were *Wystan M. Ackerman, Stephen W. Aronson*, and, on the brief, *Denis J.*

*O'Malley*, for the appellants (defendants).

*Richard E. Hayber*, with whom was *Thomas J. Durkin*, for the appellee (plaintiff).

*David R. Golder* and *Allison P. Dearington* filed a brief for the Restaurant Law Center as amicus curiae.

*Keren Salim* and *James Bhandary-Alexander* filed a brief for the Connecticut Employment Lawyers Association as amicus curiae.

*Opinion*

ROBINSON, C. J. This public interest appeal requires us to consider the extent to which a trial court should consider the merits of a party's legal theory before certifying a class action pursuant to Practice Book §§ 9-7 and 9-8. The defendants, Kaiaffa, LLC, and George Chatzopoulos, appeal from the order of the trial court certifying a class action of servers employed by Chip's Family Restaurant (Chip's).[1] The plaintiff, Jacqueline Rodriguez, alleged in her class action complaint that the defendants had violated Connecticut wage laws; see General Statutes § 31-58 et seq.; and regulations by improperly deducting a tip credit from her earnings and paying her and other class members below the minimum wage for the performance of "nonservice" tasks in connection with their duties as servers.[2] The defendants claim that, in certifying the class, the trial court improperly assumed the legal sufficiency of the plaintiff's claim when it failed to determine if she relied on an incorrect interpretation of one of the regulations implementing Connecticut wage laws. See Regs., Conn. State Agencies § 31-62-E4.[3] The defendants also contend, inter alia, that the trial court abused its discretion in concluding that the plaintiff met the various class certification requirements of Practice Book §§ 9-7 and 9-8. We disagree and, accordingly, affirm the trial court's order granting class certification.

The record reveals the following facts and procedural history. See, e.g., *Standard Petroleum Co.* v. *Faugno Acquisition, LLC*, 330 Conn. 40, 43, 191 A.3d 147 (2018) (reciting facts "assumed to be true by the trial court for purposes of the certification issues or otherwise undisputed"). The plaintiff was employed at Chip's in Wethersfield as a server from 2015 until October, 2017. In October, 2017, the plaintiff commenced this action against the defendants, on behalf of herself and other Chip's servers employed during the class period, seeking recovery under a single count that alleged a violation of Connecticut wage laws and regulations. The plaintiff alleged that Kaiaffa, LLC, owned and operated Chip's and that Chatzopoulos, as the single member of Kaiaffa, LLC, was her employer for purposes of Connecticut wage laws.[4] The plaintiff further alleged that, in addition to serving customers, servers were required to perform nonservice duties called "side work." The side work duties varied somewhat among the restaurants but generally included tasks such as cleaning the server's table section, cutting lemons, wiping menus, restocking, cleaning various appliances such as coolers and drink machines, and preparing toppings like butter and icings.[5] The plaintiff claimed that the defendants improperly took a "tip credit" for the time servers spent performing side work and, therefore, failed to pay the servers the full minimum wage. The plaintiff sought back pay and double damages pursuant to General Stat-

utes § 31-68 (a).[6] In their answer, the defendants admitted to taking the tip credit but averred that they had used the tip credit properly. Additionally, they asserted several special defenses, including a contention that any minimum wage violations were made in good faith.[7]

After class discovery, the plaintiff moved for class certification. The plaintiff supported her motion with numerous exhibits, including deposition excerpts from the defendants' corporate representative, Laura Robertson, and affidavits by several Chip's servers discussing their restaurants' respective side work policies. See footnote 5 of this opinion. The defendants filed an objection to class certification, along with their own supporting exhibits. After a hearing, the trial court issued a memorandum of decision granting the plaintiff's motion for class certification. In that decision, the trial court concluded that the plaintiff had easily satisfied three of the four elements of Practice Book § 9-7, namely, adequacy of representation, numerosity, and typicality. Specifically, because the plaintiff's proposed class included several hundred servers from six different restaurants, numerosity was clearly established. As to typicality, the court concluded that all servers, regardless of the restaurant they worked at, shared the same claim as the class representative. The trial court determined, however, that the commonality element of Practice Book § 9-7 and the predominance element of Practice Book § 9-8 (3) presented more difficult inquiries.

The trial court began by explaining the tip credit and the applicable regulations, including § 31-62-E4 of the Regulations of Connecticut State Agencies. See footnote 3 of this opinion. The court noted the significant disagreement between the parties about the meanings of the terms "service" and "non-service" in § 31-62-E4 but declined to decide the merits of either party's interpretation of the regulation at the class certification stage. After considering the plaintiff's evidence, the court concluded that the claims of the various class members were the same and that the individualized inquiries contemplated by the defendants were not essential to determining liability. Instead, the court concluded that "[w]hat is critical is that servers performed some side work on every shift at locations other than the tables and booths. The defendants do not present or identify any evidence negating that general proposition." As a result, the court concluded that the plaintiff had met the requirements of the class action rules and certified the class.[8] This public interest appeal followed. See footnote 1 of this opinion.

On appeal, the defendants principally claim that, in certifying the class, the trial court improperly assumed the plaintiff's legal theory was correct without testing its legal sufficiency and, as a result, did not define what the class needed to prove in order to prevail. Additionally, the defendants argue that the trial court (1) incor-

rectly concluded that the class presents common questions and that such questions predominated over individualized inquiries, (2) did not perform a sufficiently "rigorous analysis" when considering the superiority requirement under Practice Book § 9-8 (3), and (3) improperly failed to decide whether the defendants were the plaintiff's employers for the purpose of determining her standing. We address each claim in turn and conclude that the trial court did not abuse its discretion in certifying this class action.

I

Before turning to the defendant's specific claims in this appeal, we note the applicable standard of review and certain general principles governing class certification under our rules of practice, which "set forth a two step process for trial courts to follow in determining whether an action or claim qualifies for class action status. First, a court must ascertain whether the four prerequisites to a class action, as specified in Practice Book § 9-7, are satisfied. These prerequisites are: (1) numerosity—that the class is too numerous to make joinder of all members feasible; (2) commonality—that the members have similar claims of law and fact; (3) typicality—that the [representative] plaintiffs' claims are typical of the claims of the class; and (4) adequacy of representation—that the interests of the class are protected adequately. . . .

"Second, if the foregoing criteria are satisfied, the court then must evaluate whether the certification requirements of Practice Book § 9-8 [3] are satisfied. These requirements are: (1) predominance—that questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) superiority—that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. . . .

"It is the class action proponent's burden to prove that all of the requirements have been met. . . . To determine whether that burden has been met, we have followed the lead of the federal courts; see *General Telephone Co. of the Southwest* v. *Falcon*, 457 U.S. 147, 161, 102 S .Ct. 2364, 72 L. Ed. 2d 740 (1982); directing our trial courts to undertake a rigorous analysis. . . .

"[A] rigorous analysis ordinarily involves looking beyond the allegations of the plaintiff's complaint. The [rigorous analysis] requirement means that a class is not maintainable merely because the complaint parrots the legal requirements of the [class action] rule. . . .

"In applying the criteria for certification of a class action, the [trial] court must take the substantive allegations in the complaint as true, and consider the remaining pleadings, discovery, including interrogatory answers, relevant documents, and depositions, and any other pertinent evidence in a light favorable to the plain-

tiff. However, a trial court is not required to accept as true bare assertions in the complaint that [class certification] prerequisites were met. . . . Class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action. . . .

"Consequently, a rigorous analysis frequently entail[s] overlap with the merits of the plaintiff's underlying claim. . . . In determining the propriety of a class action, [however] the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of [the class action rules] are met." (Citations omitted; internal quotation marks omitted.) *Standard Petroleum Co.* v. *Faugno Acquisition, LLC*, supra, 330 Conn. 47–50. "Although no party has a right to proceed via the class mechanism . . . doubts regarding the propriety of class certification should be resolved in favor of certification." (Internal quotation marks omitted.) *Collins* v. *Anthem Health Plans, Inc.*, 275 Conn. 309, 321, 880 A.2d 106 (2005).

"We apply an abuse of discretion standard both [to] the lower court's ultimate determination on certification of a class as well as to its rulings that the individual [class certification] requirements have been met. . . . While our review of the legal standards applied by the [trial] court and the court's other legal conclusions is de novo . . . the [trial] court's application of those standards to the facts of the case is again reviewed only for abuse of discretion . . . . This standard means that the [trial] court is empowered to make a decision—of *its* choosing—that falls within a range of permissible decisions, and we will . . . find abuse [only] when the [trial] court's decision rests on an error of law . . . or a clearly erroneous factual finding, or . . . its decision . . . cannot be located within the range of permissible decisions." (Emphasis in original; internal quotation marks omitted.) *Standard Petroleum Co.* v. *Faugno Acquisition, LLC*, supra, 330 Conn. 51.

II

The primary issue in this appeal is whether the trial court conducted a sufficiently rigorous legal analysis in certifying the plaintiff's class. Specifically, the defendants argue that the trial court failed to interpret the meanings of "service" and "non-service," as used in § 31-62-E4 of the Regulations of Connecticut State Agencies.[9] See footnote 3 of this opinion. According to the defendants, such a determination is required under the predominance standard in *Standard Petroleum Co.* v. *Faugno Acquisition, LLC*, supra, 330 Conn. 60–61. Because the trial court did not decide which party's interpretation was legally correct, the defendants contend that the trial court could not properly decide whether the plaintiff met the class certification requirements. In response, the plaintiff argues that the trial

court sufficiently reviewed the elements of the cause of action and determined whether those elements could be proven by generalized evidence in assessing the predominance factor of the class certification inquiry.[10]

A

In considering whether the trial court applied the correct legal principles in certifying the class in the present case, we begin with some background principles governing claims under Connecticut wage laws. General Statutes § 31-60 (b) provides an exception to the state's minimum wage requirements that permits employers to take a tip credit[11] for gratuities earned by employees that "customarily and regularly receive gratuities," such as restaurant servers. See *Amaral Brothers, Inc.* v. *Dept. of Labor*, 325 Conn. 72, 80–84, 155 A.3d 1255 (2017) (discussing history of Connecticut's tip credit laws). Regulations promulgated by the Department of Labor (department) further outline the obligations of an employer seeking to utilize the tip credit. See generally Regs., Conn. State Agencies § 31-62-E1 et seq. "Those regulations (1) draw a distinction between service and nonservice employees, (2) disallow a tip credit for nonservice employees, and (3) provide that restaurant employees who engage in both service and nonservice duties may be subject to a tip credit on the service portion, but only insofar as time spent on the two types of duties is properly segmented and recorded." *Amaral Brothers, Inc.* v. *Dept. of Labor*, supra, 87. We also note that "the minimum wage law should receive a liberal construction in order that it may accomplish its purpose." *West* v. *Egan*, 142 Conn. 437, 442, 115 A.2d 322 (1955).

Section 31-62-E4 of the Regulations of Connecticut States Agencies, which is the regulation at issue in this appeal,[12] provides that, "[i]f an employee performs both service and non-service duties," and the employer segregates and records such time, the employer may utilize the tip credit for time spent performing service duties. But, if the employer fails to segregate and record time spent on the two types of duties, the employer is unable to utilize the tip credit. As a result, an employer would violate the regulation if it took the tip credit but failed to segregate and record the employee's time.

Claims seeking recovery for a restaurant's improper use of the tip credit are rare in Connecticut, so the terms "service" and "nonservice" are largely undefined outside of limited administrative guidance provided by the department.[13] Superior Court decisions that have denied class certification in past actions brought under Connecticut wage laws also have not clearly defined the two terms. See, e.g., *Bucchere* v. *Brinker International, Inc.*, Superior Court, judicial district of Waterbury, Docket No. CV-04-4000238-S (June 6, 2006), appeal dismissed, Connecticut Appellate Court, Docket No. AC 27748 (September 26, 2006), aff'd, 287 Conn. 704, 950

A.2d 493 (2008); *Galbreth* v. *Briad Restaurant Group, LLC*, Superior Court, judicial district of Waterbury, Docket No. CV-04-4000676-S (November 29, 2005) (40 Conn. L. Rptr 402, 404). As a result, the central legal dispute between the parties in the present case turns on the question of whether the regulations treat side work tasks performed by the servers as service duties or merely incidental to service duties, such that the employer was permitted to take the tip credit.[14] The defendants' arguments in this appeal require us to consider the extent to which that unresolved legal question informs the class certification decision as to the elements of commonality and predominance.

B

We now consider the defendants' contention that the trial court was required to "determine and apply the underlying substantive law" to resolve the dispute regarding the proper construction and application of § 31-62-E4 of the Regulations of Connecticut State Agencies, because, "without such resolution, a named plaintiff can obtain class certification merely by formulating a plausible, even if erroneous, legal theory." The defendants argue that the language in *Standard Petroleum Co.* requiring the trial court to review the elements of the cause of action demands a determination of which party's legal theory is correct for proper adjudication of the commonality and predominance factors of the class certification inquiry. In other words, they argue that the trial court should have determined the merits of the plaintiff's cause of action before certifying the class. We disagree.

Before addressing the defendants' claim, we must revisit and clarify the standard of review outlined in *Standard Petroleum Co.* "In applying the criteria for certification of a class action, the [trial] court must take the substantive allegations in the complaint as true, and consider the remaining pleadings, discovery, including interrogatory answers, relevant documents, and depositions, and any other pertinent evidence in a light favorable to the plaintiff. However, a trial court is not required to accept as true bare assertions in the complaint that [class certification] prerequisites were met. . . . Class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action. . . . [A] rigorous analysis frequently entail[s] overlap with the merits of the plaintiff's underlying claim. . . . In determining the propriety of a class action, [however] the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of [the class action rules] are met." (Citations omitted; internal quotation marks omitted.) *Standard Petroleum Co.* v. *Faugno Acquisitions, LLC*, supra, 330 Conn. 49–50.

We emphasize that a trial court should not assume

the truth of the plaintiff's allegations if the allegations bear on an issue of class certification. See *Bell* v. *PNC Bank, National Assn.*, 800 F.3d 360, 376–77 (7th Cir. 2015) ("[T]he default rule is that a court may not resolve merits questions at the class certification stage. . . . This does not mean, however, that *on issues affecting class certification,* a court must simply assume the truth of the matters as asserted by the plaintiff." (Citations omitted; emphasis added.)). But inquiries into the merits of a plaintiff's case should be performed only to the extent necessary to ensure the plaintiff has met the requirements of the class action rules. See *Macomber* v. *Travelers Property & Casualty Corp.*, 277 Conn. 617, 641–42, 894 A.2d 240 (2006) (trial court abused its discretion when "[i]t improperly postponed a critical inquiry on the class certification issue, namely, choice of law, and as a result relieved the plaintiff of her burden to establish all of the requirements for certification"). The same analytical framework is used under federal class action law.[15] See *Amgen, Inc.* v. *Connecticut Retirement Plans & Trust Funds*, 568 U.S. 455, 466, 133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013) ("[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the . . . prerequisites for class certification [in rule 23 of the Federal Rules of Civil Procedure] are satisfied"); *In re Initial Public Offerings Securities Litigation*, 471 F.3d 24, 41 (2d Cir. 2006) ("a district judge may certify a class only after making determinations that each of the [r]ule 23 requirements has been met . . . the obligation to make such determinations is not lessened by overlap between a [r]ule 23 requirement and a merits issue . . . [and] in making such determinations, a district judge should not assess any aspect of the merits unrelated to a [r]ule 23 requirement").

The defendants correctly observe that the trial court did not inquire into the merits of the plaintiff's core legal theory and assumed its viability in ruling on the motion for class certification, specifically stating that, "if the plaintiff is correct about the categorization of side work as nonservice duties, she would be entitled to the full minimum wage, without any tip credit, for all of her work," and declining to define the terms service or nonservice because "it is not necessary or appropriate to resolve these claims at the class action certification stage." As a result, we must determine whether an inquiry into the merits of the plaintiff's legal theory was necessary in order to determine whether the plaintiff established commonality and predominance.

In order to establish commonality, the plaintiff must demonstrate that "there are questions of law or fact common to the class," which "is easily satisfied because there need only be one question common to the class . . . the resolution of which will advance the litigation." (Internal quotation marks omitted.) *Standard Petroleum Co.* v. *Faugno Acquisition, LLC,* supra, 330 Conn.

54. The common question asserted by the plaintiff in the present case is whether the defendants improperly took a tip credit for time that servers were performing nonservice duties while being paid the minimum wage. The plaintiff asserts that the approximately thirty-five tasks assigned to servers as side work are nonservice duties because they are performed away from the tables and booths.

Commonality is unaffected by a determination of which particular tasks are nonservice in nature because the defendants' liability may still be determined on a class-wide basis. See *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 180 L. Ed. 2d. 374 (2011) ("[t]hat common contention . . . must be of such a nature that it is capable of [class-wide] resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke"). For example, if even one of the thirty-five tasks identified as side work qualified as a nonservice task under the trial court's definition, the defendants' liability as to that task is still a common question as to all servers who performed side work. See *Collins* v. *Anthem Health Plans, Inc.*, supra, 275 Conn. 324 ("[t]he commonality test is met when there is at least one issue [the] resolution [of which] will affect all or a significant number of the putative class members" (internal quotation marks omitted)). Although the number of qualifying tasks could affect the ultimate *scope* of the defendants' potential liability, determination of the legal meaning of a "service" task would not remove the common nature of the question.

A more searching merits inquiry may be necessary in considering whether common questions *predominate* over individual questions, of course, because the predominance element of the class certification analysis relates to the nature of the actual proof necessary to establish the claims. Under the predominance test set forth in *Standard Petroleum Co.*, a court should "[first] review the elements of the causes of action that the plaintiffs seek to assert on behalf of the putative class. . . . Second, the court should determine whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to monetary or injunctive relief. . . . Third, the court should weigh the common issues that are subject to generalized proof against the issues requiring individualized proof in order to determine which predominate. . . . Only when common questions of law or fact will be the object of most of the efforts of the litigants and the court will the predominance test be satisfied." (Internal quotation marks omitted.) *Standard Petroleum Co.* v. *Faugno Acquisition, LLC*, supra, 330 Conn. 61.

The defendants argue that, by failing to interpret the pertinent regulations, the trial court abdicated its responsibility to determine what the plaintiff would need to prove in order for the class to prevail at trial. In their analysis of predominance, the defendants raise several possible individualized issues, such as how each server performed a task, how long a server spent on side work during a particular shift, and what tasks were performed during particular shifts. The defendants have not, however, explained how a determination of the meanings of service or nonservice would change the plaintiff's proof with respect to the claims of the class. Put differently, if the trial court interpreted the regulations and determined that the defendants are correct and that either the regulation is not referring to a server's occupational duties, or that all of the side work is incidental to service as a matter of law, this interpretation would not eliminate the issues that are subject to generalized proof. Instead, that interpretation would bear on the ultimate outcome on the merits of the parties' pending motions for summary judgment. See footnote 8 of this opinion. "[A] court can never be *assured* that a plaintiff will prevail on a given legal theory prior to a dispositive ruling on the merits, and a full inquiry into the merits of a putative [class'] legal claims is precisely what . . . the [United States Supreme Court has] cautioned is not appropriate for a [r]ule 23 certification inquiry." (Emphasis in original.) *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Industrial & Service Workers International Union, AFL-CIO, CLC* v. *ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010).

In *Lassen* v. *Hoyt Livery, Inc.*, Docket No: 3:13-cv-01529 (JAM), 2014 WL 4638860 (D. Conn. September 17, 2014), the United States District Court for the District of Connecticut provided a persuasive explanation for not deciding a similar issue on class certification. In *Lassen*, the plaintiff alleged that the defendants had violated both the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (FLSA), and Connecticut's minimum wage laws, and the court certified both an FLSA conditional collective action and a rule 23 class of limousine drivers.[16] Id., *1. The limousine drivers alleged that they had not been paid properly when they performed certain compensable functions, such as waiting at the airport for passengers. Id., *1–2. When certifying the FLSA action, the court declined to decide "which activities are properly categorized as compensable 'work time' " because "these arguments are not relevant to the conditional collective action certification inquiry." Id., *5. With respect to the rule 23 class, the court disagreed with the defendants that "individual inquiries will be necessary to determine which activities . . . constitute compensable work time . . . ." Id., *12. The court stated that these issues would be "best resolved on a [class-wide] basis" and, therefore, did not decide at the

class certification stage whether the various activities should have been compensated under Connecticut wage laws. Id.

Looking beyond Connecticut, we observe that other federal district courts presented with the question of whether certain tasks are related to a server's tipped duties often do *not* decide the question at an early stage in the litigation. See *Black* v. *P.F. Chang's China Bistro, Inc.*, Docket. No. 16-cv-3958, 2017 WL 2080408, *8 (N.D. Ill. May 15, 2017) ("[w]hether . . . these tasks are 'related' or 'unrelated' [to tipped work] is a merits issue and cannot be resolved at the conditional certification stage"); *Ide* v. *Neighborhood Restaurant Partners, LLC*, Docket No. 1:13-CV-509-MHC, 2015 WL 11899143, *6–8 (N.D. Ga. March 26, 2015) (deciding whether server's duties were "incidental" to tipped occupation in connection with motions for summary judgment); *Driver* v. *AppleIllinois, LLC*, 890 F. Supp. 2d 1008, 1029–33 (N.D. Ill. 2012) (concluding that servers were engaged in unrelated, nontipped duties in ruling on summary judgment motions).

We conclude that the trial court properly deferred its ruling on the merits of the parties' legal theories until after its decision to certify the class in the present case.[17] If the plaintiff's legal theory is correct, she must prove that the servers performed nonservice work during every shift and that the defendants did not separate and record the time spent performing the nonservice work. The defendants have not presented a persuasive reason as to why a determination of the meanings of "service" or "nonservice" would affect whether common issues predominate, despite the variety of tasks at issue in this case, because the proposed, individualized inquiries envisioned by the defendants are unaffected by such a definition. If the trial court determines, for example, that cutting lemons is a nonservice task, the plaintiff may need to prove that the servers performed this task, among other nonservice tasks, at trial. As a result, the trial court properly declined to decide the merits of the plaintiff's legal theory in certifying the class in the present case.[18]

### III

We next consider whether the trial court abused its discretion in deciding that the plaintiff had satisfied the requirements of Practice Book §§ 9-7 and 9-8. The defendants largely challenge the trial court's conclusions on commonality and predominance but also contend that the trial court incorrectly decided the elements of typicality, adequacy of representation, and superiority. We conclude that the trial court did not abuse its discretion.

### A

As we previously discussed, Practice Book § 9-7 requires a plaintiff to affirmatively demonstrate that

"there are questions of law or fact common to the class . . . ." The trial court considered predominance and commonality jointly but determined that each server possessed the same claim, namely, that they performed "nonservice" duties and are entitled to the full minimum wage because the defendants failed to segregate and record the time spent on those duties. The defendants, however, argue that, "[g]iven the numerous tasks to be analyzed and the differences in how they were performed at different locations and at different times by different individuals, there was no single question satisfying commonality . . . ." We disagree.

The defendants construe the commonality factor too narrowly in their focus on the numerous side work tasks performed by the putative class members at varying times and locations. First, "most courts have held that factual variations among class members will not prevent a finding of commonality." *Collins* v. *Anthem Health Plans, Inc.*, supra, 275 Conn. 325. Second, the plaintiff alleges and supports the claim that a common side work policy was used at all of the defendants' restaurants. The existence of such a policy is instrumental in supporting a finding of commonality. See id., 324 ("[t]he commonality requirement is satisfied as long as the members of the class have allegedly been affected by a general policy of the defendant, and the general policy is the focus of the litigation" (internal quotation marks omitted)); see also *Shahriar* v. *Smith & Wollensky Restaurant Group, Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (concluding that server class established commonality because their claims "all derive from the same compensation policies and tipping practices"); *Chime* v. *Peak Security Plus, Inc.*, 137 F. Supp. 3d 183, 208 (E.D.N.Y. 2015) ("[c]ommonality is usually satisfied in wage cases '[when] the plaintiffs allege that [the] defendants had a common policy or practice of unlawful labor practices' ").

Although the defendants note some factual differences between the various Chip's restaurants, such as variations in the types of tasks assigned and each restaurant's layout, the plaintiff's evidence at this stage demonstrates an overarching policy of servers performing generally consistent side work tasks at the direction of restaurant managers. This restaurant-wide policy is supported by the fact that Robertson, the defendants' corporate representative, testified as to the policy applicable in all six restaurants. Additionally, the plaintiff's server affidavits support the finding of a consistent policy throughout the restaurants. Each of the server affidavits discusses how the server performed side work at the Chip's restaurant where the server was employed. For instance, the Wethersfield affidavit described the "expo cooler" side work as (1) wiping down the cooler, (2) restocking, (3) and " 'flip[ping]' " the contents of the cooler. This practice is substantially similar to those described in the affidavits of the servers

who work in the Trumbull, Orange, Fairfield, and South-bury restaurants.[19] Although the defendants are correct that servers might perform such side work tasks differently, we conclude that any differences would likely be insubstantial and do not affect commonality. See *Mooney* v. *Domino's Pizza, Inc.*, Docket No. 1:14-cv-13723-IT, 2016 WL 4576996, *6 (D. Mass. September 1, 2016) (concluding that "[w]hether answering phones, folding boxes, preparing deliveries, and any other task performed by class members while inside [are] 'related' to delivering pizzas is a legal question that will be common to all class members," despite defendant's objections that such determinations would involve individualized inquiries).

The defendants contend that a different result is compelled under the commonality standard outlined in *Wal-Mart Stores, Inc.* v. *Dukes*, supra, 564 U.S. 350. In *Dukes*, the United States Supreme Court concluded that the class, numbering 1.5 million individuals, failed to demonstrate commonality in their Title VII gender discrimination claims. Id., 357, 359. The court stated that "[t]heir claims must depend upon a common contention . . . . That common contention, moreover, must be of such a nature that it is capable of [class-wide] resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id., 350. Additionally, the class members must "have suffered the same injury . . . ." (Internal quotation marks omitted.) Id. As the alleged discrimination could not be linked to an overarching employment policy by the plaintiff but, instead, manifested in decisions of local supervisors, the court reversed the District Court's decision certifying the class. Id., 343, 355–57.

*Dukes* is distinguishable and affords the defendants no assistance because the plaintiff in the present case presents a singular question of liability common to all class members. Unlike the plaintiffs in *Dukes*, who sued for gender discrimination, which entails a consideration of discrete employment decisions in thousands of locations as to specific persons with no evidence that a common policy had resulted in the disparate treatment, the plaintiff in the present case is seeking to recover damages for a company-wide practice of assigning non-service duties and improperly taking the tip credit. Proof of the "truth or falsity" of this policy will answer the question of liability as to all class members. Id., 350. As a result, we are not persuaded that *Dukes* dictates a different conclusion. See *Zivkovic* v. *Laura Christy, LLC*, 329 F.R.D. 61, 70 (S.D.N.Y. 2018) (concluding that *Dukes* was "markedly different" from case concerning minimum wage violations and that defendant's argument pointing to "individual questions regarding each employee's schedules and compensation" involved damages questions that "do not defeat class certification").

## B

Along with their challenge to the commonality determination under Practice Book § 9-7, the defendants also assert that the trial court improperly failed to decide whether the defendants were the plaintiff's employers. The defendants claim that they are not the plaintiff's employers and that there is no legal entity named "Connecticut Chip's Family Restaurant," which was the employer named in the plaintiff's proposed class definition. For these reasons, the defendants argue that the plaintiff lacks standing and, therefore, that her claims are not typical and that she is not an adequate class representative. In response, the plaintiff contends that she has demonstrated numerosity[20] and that this question with respect to the employing party relates to the merits and is not properly decided at the class certification stage. In the alternative, the plaintiff argues that any error in this respect would be harmless because the defendants are in fact her employers. We conclude that the trial court did not abuse its discretion in determining that the plaintiff satisfied both her adequacy as a class representative and typicality.

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . . Standing requires no more than a colorable claim of injury; a [party] ordinarily establishes . . . standing by allegations of injury. Similarly, standing exists to attempt to vindicate arguably protected interests." (Internal quotation marks omitted.) *May* v. *Coffey*, 291 Conn. 106, 112, 967 A.2d 495 (2009). "The issue of standing implicates subject matter jurisdiction . . . ." (Internal quotation marks omitted.) Id., 113.

"The requirements of justiciability and controversy are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. . . . As long as there is some direct injury for which the plaintiff seeks redress, the injury that is alleged need not be great. . . . Where the nexus between the injury and the claim sought to be adjudicated is obvious and direct, a plaintiff has standing to maintain the claim." (Citations omitted; internal quotation marks omitted.) *Gay & Lesbian Law Students Assn.* v. *Board of Trustees*, 236 Conn. 453, 463–64, 673 A.2d 484 (1996).

We conclude that the trial court did not need to decide whether the defendants were the plaintiff's employers

to determine standing at the class certification stage. Whether the defendants are the correct party is an issue of misjoinder and does not implicate the court's subject matter jurisdiction. See General Statutes § 52-108 ("An action shall not be defeated by the nonjoinder or misjoinder of parties. New parties may be added and summoned in, and parties misjoined may be dropped, by order of the court, at any stage of the action, as the court deems the interests of justice require."); *Bloom* v. *Miklovich*, 111 Conn. App. 323, 329, 958 A.2d 1283 (2008) ("[n]aming an improper person as a party in a legal action constitutes misjoinder" (internal quotation marks omitted)). If the defendants are the incorrect parties to this action, they must file a motion to strike. See Practice Book § 11-3 ("[t]he exclusive remedy for misjoinder of parties is by motion to strike"). Although the defendants are correct that the plaintiff failed to name the individual limited liability companies that operate each of the Chip's locations; see footnote 4 of this opinion; "the failure to give notice to or to join an indispensable party does not impact the court's subject matter jurisdiction." *Batte-Holmgren* v. *Commissioner of Public Health*, 281 Conn. 277, 288, 914 A.2d 996 (2007). Instead, the plaintiff may seek an order from the trial court adding those entities as parties, if "the interests of justice require." Practice Book § 9-19.

"It is well established that a representative plaintiff must have individual standing to assert claims against all the members of a defendant class."[21] *Macomber* v. *Travelers Property & Casualty Corp.*, supra, 277 Conn. 632. The plaintiff in the present case possesses standing, as she is seeking recovery for a cognizable injury, namely, violations of Connecticut wage laws and regulations, and has the statutory right of action against her employer for such violations. See General Statutes § 31-68 (a). In *Macomber*, the plaintiff sued several defendants, alleging that they had improperly used structured settlements to resolve certain personal injury claims. *Macomber* v. *Travelers Property & Casualty Corp.*, supra, 620, 623 The plaintiff's own complaint did not, however, advance a legally valid claim against one of the corporate defendants, Solomon Smith Barney Holdings, Inc. (Smith Barney), because Smith Barney's alleged participation in the scheme did not occur until after the plaintiff had entered into her structured settlement. Id., 634. The court concluded that "[t]he plaintiff can have no standing to assert a claim against Smith Barney and, therefore, cannot be a typical class representative, because she cannot typically and adequately represent those class members with such claims. Put another way, she has no incentive aggressively to litigate any claims against Smith Barney and, therefore, is not an appropriate class representative." Id.

The plaintiff in the present case alleged facts, which the trial court assumed to be true for class certification purposes, demonstrating that the defendants were her

employers. See id., 634 (considering plaintiff's own allegations to determine standing). Unlike the plaintiff in *Macomber*, who could not assert a cognizable claim against Smith Barney, the plaintiff in the present case faces no such legal impediment and has every incentive to litigate her claim aggressively against the defendants. The nexus between the injury and the claim against the defendants named in this case is "obvious and direct"; (internal quotation marks omitted) *Gay & Lesbian Law Students Assn.* v. *Board of Trustees*, supra, 236 Conn. 464; as Kaiaffa, LLC, and Chatzopoulos are the members of all of the limited liability companies that operate the restaurants at issue in the present case, and, according to the plaintiff, Chatzopoulos implemented the policies at issue. See footnote 4 of this opinion.

Although the defendants characterize their argument as a challenge to the plaintiff's standing, a determination as to whether the defendants meet the definition of an "employer" under Connecticut's wage laws is more accurately analyzed as a merits inquiry. See *Butler* v. *Hartford Technical Institute, Inc.*, 243 Conn. 454, 463–64, 704 A.2d 222 (1997) (individual was "an employer," as defined by General Statutes § 31-71a (1), and, therefore, could be liable under General Statutes § 31-72 for unpaid overtime wages, "if the individual is the ultimate responsible authority to set the hours of employment and to pay wages and is the specific cause of the wage violation"). The defendants argue in their brief that wage payments and the assignment of tasks were made by individual managers and not Chatzopoulos. A determination on this question affects liability, and the defendants do not explain how its resolution affects the plaintiff's adequacy or typicality. Although each restaurant is run by an individual limited liability company, it is either Kaiaffa, LLC, or Chatzopoulos (whether through his membership in Kaiaffa, LLC, or individually) who is the member of those limited liability companies. Because the business structure is the same for all of the restaurants, the question that the defendants present as particular to the plaintiff's standing is a question best determined on a class-wide basis.[22]

### C

We next address the defendants' claim that the trial court abused its discretion in determining that the plaintiff satisfied the predominance and superiority requirements of Practice Book § 9-8. Because the defendants make interrelated arguments regarding both predominance and superiority, we consider those claims together.

The defendants argue that the plaintiff has not demonstrated predominance because the jury will need to decide several individualized issues, such as whether each of the thirty-five side work tasks was either service related or incidental to service when performed by each server, whether each individual server performed non-

service tasks, how long these tasks took each server to perform, and during what shifts each server performed these nonservice tasks. Also, the defendants and the amicus curiae the Restaurant Law Center contend that the trial court's decision represents a "steep departure" from several previous Connecticut trial court decisions, which they argue correctly decided the issue of predominance. Specifically, as to superiority, the defendants argue that the trial court did not examine how the plaintiff's claim would be proven at trial and that, if the trial court had performed such a rigorous analysis, it would have concluded that the class members could prove their claims only through individualized testimony.

In response, the plaintiff contends that the class' claims may be proven by generalized evidence because the defendants produced no evidence demanding individualized inquiries. The plaintiff argues that the earlier Superior Court decisions declining to certify classes of servers were wrongly decided in that they (1) failed to account for the defendants' burden to prove their entitlement to the tip credit, and (2) failed to apply the burden shifting framework outlined in *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 828 A.2d 64 (2003). Additionally, the plaintiff claims that she has sufficiently outlined her trial plan and demonstrated that adjudicating these claims as a class action is superior. Similarly, she contends that any individualized damages questions may be proven by representative evidence. We conclude that the trial court did not abuse its discretion in determining that common issues predominate and that a class action is superior to individually litigating the claims.

"In order to determine whether common questions predominate, [a court must] . . . examine the [causes] of action asserted in the complaint on behalf of the putative class. . . . Whether an issue predominates can . . . be determined [only] after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action. . . . Common issues of fact and law predominate if they ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to . . . relief. . . . [When], after adjudication of the [class-wide] issues, [the] plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual[ized] claims, such claims are not suitable for class certification . . . .

"[When] cases [involve] individualized damages . . . [and those] damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impedi-

ment to class certification. . . . It is primarily when there are significant individualized questions going to liability that the need for individualized assessments of damages is enough to preclude [class] certification." (Internal quotation marks omitted.) *Standard Petroleum Co.* v. *Faugno Acquisition, LLC*, supra, 330 Conn. 60–61. As outlined in our earlier discussion of predominance; see part II B of this opinion; a trial court is first required to review the elements of the cause of action, then decide whether those elements may be proven by generalized or individualized proof, and, finally, it must weigh whether those common issues predominate over individual issues. Id., 61.

Practice Book § 9-8 (3) provides that, when deciding whether a class action is superior, the trial court should consider "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of class action." "Superiority . . . is intertwined with the predominance requirement. . . . If the predominance criterion is satisfied, courts generally will find that the class action is a superior mechanism even if it presents management difficulties." (Citation omitted; internal quotation marks omitted.) *Standard Petroleum Co.* v. *Faugno Acquisition, LLC*, supra, 330 Conn. 74.

In its discussion of predominance, the trial court began by examining the plaintiff's claim. The court first quoted § 31-62-E4 of the Regulations of Connecticut State Agencies, which details the elements of a cause of action under § 31-68 (a).[23] Although the trial court did not break down the regulation into elements, it is evident that the plaintiff must show that, on any given shift (1) she performed both service and nonservice duties, (2) the employer did not segregate and record the time spent on each type of duty, and (3) the employer took the tip credit. See *Stevens* v. *Vito's by the Water, LLC*, Superior Court, judicial district of Hartford, Docket No. CV-15-6062506-S (November 9, 2017) (65 Conn. L. Rptr. 430, 433). The defendants do not contest elements two and three. As a result, the trial court properly dedicated its analysis to whether the first element could be proven by generalized proof. The trial court concluded that the plaintiff's proof included generalized evidence, such as the defendants' own admissions via their corporate representatives, and that individualized evidence demonstrating the type and amount of side work was unnecessary to prove the plaintiff's claim. According to the trial court, if the plaintiff's legal interpretation is correct, the plaintiff's claim can be proven by generalized evidence.

Previous Connecticut trial court decisions, which declined to certify classes in earlier tip credit cases, concluded that individual issues predominated because the nature of the work performed and the time spent on the duties were individual questions. See *Bucchere* v. *Brinker International, Inc.*, supra, Superior Court, Docket No. CV-04-4000238-S; *Palmer* v. *Friendly Ice Cream Corp.*, Docket No. CV-04-4001612-S, 2006 WL 361339, *4–5 (Conn. Super. January 25, 2006), appeal dismissed, Connecticut Appellate Court, Docket No. 27669 (July 12, 2006), aff'd, 285 Conn. 462, 940 A.2d 742 (2008); *Galbreth* v. *Briad Restaurant Group, LLC*, supra, 40 Conn. L. Rptr. 404; see also *Orozco* v. *Darden Restaurants, Inc.*, Superior Court, judicial district of Hartford, Docket No. CV-04-4022118-S (August 3, 2006) (41 Conn. L. Rptr. 717, 718) ("[i]n [*Bucchere, Galbreth*, and *Palmer*], the court found that individualized issues regarding the nature of the duties that plaintiffs were required to perform at each of the restaurants and the extent to which each of the plaintiffs had to perform these duties during each of their shifts at the various restaurants predominated over issues that would require generalized proof"), appeal dismissed, Connecticut Appellate Court, Docket No. AC 27937 (September 26, 2006), aff'd sub nom. *Bucchere* v. *Brinker International, Inc.*, 287 Conn. 704, 950 A.2d 493 (2008). The plaintiff contends that these trial court decisions reached the incorrect result by failing to correctly apply this court's decision in *Schoonmaker*.

In *Schoonmaker* v. *Lawrence Brunoli, Inc.*, supra, 265 Conn. 234, this court adopted the burden shifting analysis first outlined in *Anderson* v. *Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946). Under this burden shifting scheme, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." (Internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, supra, 239–40.

This burden shifting analysis assists the plaintiff in establishing the *amount* of improperly paid work. See *Anderson* v. *Mt. Clemens Pottery Co.*, supra, 328 U.S. 688 ("[H]ere we are assuming that the employee has proved that he has performed work and has not been paid in accordance with the statute. The damage is therefore certain. The uncertainty lies *only in the*

*amount of damages* arising from the statutory violation by the employer." (Emphasis added.)); see also *Kuebel* v. *Black & Decker, Inc.*, 643 F.3d 352, 364–65 (2d Cir. 2011) ("[t]he *Anderson* test simply addresses whether there is a reasonable basis for calculating damages, assuming that a violation has been shown"); *Evans* v. *Tiger Claw, Inc.*, 173 Conn. App. 409, 420, 163 A.3d 1282 ("[t]he purpose of the *Anderson* [burden shifting] scheme is simply to prevent an employer from complaining that 'the damages lack the exactness and precision of measurement that would be possible had [it] kept records' "), cert. denied, 327 Conn. 976, 174 A.3d 800 (2017). Accordingly, in our view, the reasoning of the previous Superior Court cases was incorrectly based on the conclusion that the *extent* of the plaintiff's side work was an individual issue. Under § 31-62-E4 of the Regulations of Connecticut State Agencies, the plaintiff has to establish only that she performed nonservice and service work together, not that she performed nonservice work for any specific length of time; *Schoonmaker* does not require plaintiffs to establish with certainty the amount of uncompensated work performed.

That having been said, we observe that *Schoonmaker* does not lower the plaintiff's burden of proving whether she performed such work in the first instance. The plaintiff contends, however, that the class is not required to prove the precise nature of the employees' side work duties because it is the employer's burden to prove "that they are entitled [to] any exception to the minimum wage laws." The defendants disagree and argue that it is the plaintiff's burden to prove the type of side work performed during each shift. We agree with the plaintiff. In order to take advantage of a statutory exception to minimum wage laws, such as the exclusion of certain individuals under the definition of "employee" in § 31-58 (e), an employer has the burden of proving that an employee qualifies under that exception. See *Butler* v. *Hartford Technical Institute, Inc.*, supra, 243 Conn. 465–66; see also *Shell Oil Co*. v. *Ricciuti*, 147 Conn. 277, 283, 160 A.2d 257 (1960) ("[t]he burden rests on the employer to establish that his employees come within an exemption"). The tip credit functions in the same manner as an exception to the minimum wage, as it permits employers to pay their employees less than the minimum wage. See *Amaral Brothers, Inc.* v. *Dept. of Labor*, supra, 325 Conn. 74 (explaining that § 31-60 (b), tip credit statute, "carves out certain exceptions to Connecticut's minimum wage laws"); see also *Perez* v. *Lorraine Enterprises, Inc.*, 769 F.3d 23, 27 (1st Cir. 2014) (characterizing FLSA tip credit as "[an exception] to the minimum wage rate"). As a result, it is the employer's burden to establish that the employees qualified for the tip credit. See *Stokes* v. *Norwich Taxi, LLC*, 289 Conn. 465, 481–83, 958 A.2d 1195 (2008) (placing burden on employer to prove appli-

cation of fluctuating workweek exception under FLSA); see also *Pedigo* v. *Austin Rumba, Inc.*, 722 F. Supp. 2d 714, 724 (W.D. Tex. 2010) ("[the] [d]efendants, as the employers, bear the burden of proving that they are entitled to taking tip credits" (internal quotation marks omitted)); *Driver* v. *AppleIllinois, LLC*, 265 F.R.D. 293, 298 (N.D. Ill. 2010) (same). But see *Fast* v. *Applebee's International, Inc.*, 638 F.3d 872, 882 (8th Cir. 2011) ("the employees . . . must establish that they spent a *substantial amount of time* performing nontip-producing duties such that they were not performing a tipped occupation for at least portions of their shifts" (emphasis added)), cert. denied, 565 U.S. 1156, 132 S. Ct. 1094, 181 L. Ed. 2d 977 (2012).

The question remains whether the plaintiff may prove the class' performance of nonservice duties with representative evidence or whether the nature of side work requires individual testimony, as the defendants contend.

In *Tyson Foods, Inc.* v. *Bouaphakeo*, 577 U.S. 442, 454, 136 S. Ct. 1036, 1049, 194 L. Ed. 2d 124 (2016), the United States Supreme Court permitted an FLSA class to prove the amount of time spent performing an uncompensated task through the use of representative testimony. According to the court, whether representative proof is permitted "to establish [class-wide] liability will depend on the purpose for which the sample is being introduced and on the underlying cause of action." Id., 460. Representative proof was permitted in *Tyson Foods, Inc.*, because of the burden shifting analysis from *Anderson*. See id., 456–57 ("In this suit, as in [*Anderson*], [the] respondents sought to introduce a representative sample to fill an evidentiary gap created by the employer's failure to keep adequate records. . . . Rather than absolving the employees from proving individual injury, the representative evidence . . . was a permissible means of making that very showing."). As each individual employee could have used the representative evidence to prove liability given the discrete nature of the task at issue in *Tyson Foods, Inc.*, such evidence was properly used for the class. See id., 457.

The defendants contest the use of representative testimony in the present case because, they contend, the class members do not share the same tasks. We disagree. In the present case, the tasks expected of servers are relatively uniform, although certain tasks may have been performed by different servers on different shifts. See *Secretary of Labor* v. *DeSisto*, 929 F.2d 789, 793 (1st Cir. 1991) ("an employee can . . . represent other employees only if all perform substantially similar work"). But see *Ferreras* v. *American Airlines, Inc.*, 946 F.3d 178, 186–87 (3d Cir. 2019) (concluding that *Tyson Foods, Inc.*, did not apply as there was "substantial variability" in employees' tasks). Based on the depositions of the defendants' corporate representative, the

trial court could reasonably have found, for purposes of certifying the class, that the plaintiffs demonstrated a common policy of similar side work tasks that could be used to show that all Chip's servers performed non-service duties. For example, when asked how Wethersfield side work differed from the side work at other restaurants, Robertson stated: "*I would say it has the same tasks*, but the way it's written, the way it's categorized, the way things are stored, the layout, it's all different." (Emphasis added.) So, although there is some variation in the performance of these tasks, they are outlined and described similarly by the defendants themselves in their own policies and deposition testimony. Additionally, the defendants admit that all servers are trained in a similar manner and perform some of their side work away from the tables and booths.[24]

The defendants also contend that representative testimony is improper because class members must individually prove how frequently and during what shifts specific duties were performed, and the record lacks evidence to that effect. We again disagree. As in *Tyson Foods, Inc.*, the plaintiff may use inference to bridge an evidentiary gap in this regard. The defendants did not record which duties servers performed during each shift. As a result, it would be unfair to require plaintiffs to prove facts for which there is no individual proof. See *Mooney* v. *Domino's Pizza, Inc.*, supra, 2016 WL 4576996, *4 ("[the] [d]efendants' proposed interpretation would make the [Massachusetts] Tips Act effectively unenforceable even in [single plaintiff] litigation, as no employee would be able to litigate the specific circumstances of the individual customer interactions, undoubtedly resulting in situations in which employees were improperly deprived of tips"). But see *In re Autozone, Inc.*, Docket No. 3:10-md-02159-CRB, 2016 WL 4208200, *15 (N.D. Cal. August 10, 2016) ("[t]he representational evidence [in *Tyson Foods, Inc.*] did not depend on individual employees' memories, it simply filled in a gap"), aff'd, 789 Fed. Appx. 9 (9th Cir. 2019).

In light of *Schoonmaker*, which permits employees to shift the burden to the employer to establish the precise amount of improperly paid work, and the statutory framework making it the employer's burden to prove its entitlement to the tip credit, we conclude that the trial court did not abuse its discretion in determining that the nature of the side work performed by the class can be proven by representative testimony. See *Secretary of Labor* v. *DeSisto*, supra, 929 F.2d 792 (permitting Secretary of Labor to establish "the initial burden of proof requirement" with representative testimony in FLSA case); *Mooney* v. *Domino's Pizza, Inc.*, supra, 2016 WL 4576996, *7 (permitting class to prove "how many hours class members typically spent performing particular duties" with representative testimony); see also *Vaquero* v. *Ashley Furniture Industries, Inc.*, 824

F.3d 1150, 1156 (9th Cir. 2016) (permitting employee to use representative evidence in form of company policies and class member declarations to prove liability, as defendant "may challenge the viability" of evidence later in proceedings). The class can establish what tasks were performed, and how frequently they were performed, through testimony offering the servers' recollection of these facts. For example, if all cleaning tasks are determined to be nonservice in nature, a group of servers may testify regarding how, and with what frequency, they cleaned the restaurant. *Tyson Foods, Inc.* "tells us that representative evidence include[s] employee testimony, video recordings, and expert studies. . . . So testimony from [the defendant's employees] can amount to representative evidence." (Citation omitted; internal quotation marks omitted.) *Ridgeway* v. *Walmart, Inc.*, 946 F.3d 1066, 1087 (9th Cir. 2020). A defendant may still mount individual defenses against representative testimony. See *Tyson Foods, Inc.* v. *Bouaphakeo*, supra, 136 S. Ct. 1047.

For these reasons, we conclude that the trial court did not abuse its discretion in permitting the plaintiff to use representative evidence to prove that class members performed service and nonservice work. "As long as there is a basis to conclude that the trial court reached a reasoned conclusion that common issues will outweigh others, predominance is properly established." *Standard Petroleum Co.* v. *Faugno Acquisition, LLC*, supra, 330 Conn. 65. If and when the trial court determines that certain tasks qualify as nonservice duties, the plaintiffs will be required to demonstrate that the class performed those duties for which they were improperly compensated, with the burden then shifting to the defendants to prove that they were permitted to take the tip credit for the performance of those tasks.[25] Whether an individual server performed nonservice tasks during a particular shift presents an individualized question of damages[26] that generally does not defeat predominance.[27] See *Zivkovic* v. *Laura Christy, LLC*, supra, 329 F.R.D. 75 ("the types of individual questions that exist in wage-and-hour cases, such as the hours worked or the exact damages to which each plaintiff might be entitled, [are] inevitable and [do] not defeat the predominance requirement" (internal quotation marks omitted)); *Whitehorn* v. *Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 199 (S.D.N.Y. 2011) (differences in "job duties and thus the projected shift hours" required individualized determinations of damages); see also 2 W. Rubenstein, Newberg on Class Actions (5th Ed. 2020) § 4:54 ("the black letter rule is that individual damage calculations generally do not defeat a finding that common issues predominate"). This framework may present the trial court with administrative challenges relating to case management, but such difficulties are inevitable in complex litigation of this type.

Our conclusion that the plaintiff may use representative testimony to establish predominance also supports a conclusion that litigating these claims as a class is superior. We recognize that the trial court's memorandum of decision addressed superiority only briefly and did not expressly consider many of the difficulties that the defendants argue militate against the superiority of a class action. Given our conclusion that the plaintiff may use representative testimony to prove liability, however, we are not persuaded by the defendants' arguments on this point. Although further testimony or other evidence may be required for the class to succeed on the merits of its claim, the absence of such evidence at this stage does not establish a lack of superiority.

Litigating the claims of hundreds of servers in this fashion promotes judicial efficiency and provides many individuals, who would likely not bring such a claim, an opportunity for relief. See *Grimes* v. *Housing Authority*, 242 Conn. 236, 244, 698 A.2d 302 (1997) ("[c]lass action suits: (1) promote judicial economy and efficiency; (2) protect defendants from inconsistent obligations; (3) protect the interests of absentee parties; and (4) provide access to judicial relief for small claimants"). This class, which is limited to six restaurants located within our state, does not include different restaurant types or restaurants across state lines. Claims such as those presented in the present case are ideally suited for class certification. The defendants themselves may also be the ultimate beneficiaries of class treatment when the claim rests, at bottom, on the validity of a single theory of liability because, if that theory fails as a matter of law, the decision may operate to foreclose recovery for hundreds of plaintiffs.

D

The defendants also claim that the trial court improperly defined the class in its certification order, as required under Practice Book § 9-9.[28] The defendants assert that the trial court improperly certified the class utilizing the name "Connecticut Chip's Family Restaurant," which is not a legal entity. We reject this contention. Although "Connecticut Chip's Family Restaurant" is not a legal entity, that term clearly encompasses the six Chip's restaurants, rendering readily ascertainable and verifiable the individuals employed at those restaurants. Put differently, individual servers will easily recognize whether they qualify as a class member based on their employment at a Chip's restaurant during the stated time period, and their eligibility as such will be subject to definitive verification. See 3 W. Rubenstein, supra, § 7:27 ("Courts confront at least three recurring issues in overseeing the class definition. First, the class must be defined in a manner that makes its membership 'ascertainable.' . . . Second, the class definition must be clear and precise. . . . Third, a court certifying a class may have to certify more than

one class or subclasses." (Emphasis omitted; footnotes omitted.)) Accordingly, it was not an abuse of discretion to describe the class using the name "Connecticut Chip's Family Restaurant."[29]

The order granting class certification is affirmed.

In this opinion the other justices concurred.

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

** October 6, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The defendants appeal pursuant to the Chief Justice's grant of their petition to file an expedited public interest appeal pursuant to General Statutes § 52-265a. Although this court has considered whether other class action procedural positions are appealable final judgments; see, e.g., *Palmer* v. *Friendly Ice Cream Corp.*, 285 Conn. 462, 463, 940 A.2d 742 (2008); *Rivera* v. *Veterans Memorial Medical Center*, 262 Conn. 730, 733–36, 818 A.2d 731 (2003); we have not specifically decided whether a trial court's order granting class certification is appealable outside of the appellate review permitted by General Statutes § 42-110h for class actions brought under the Connecticut Unfair Trade Practices Act. See *Collins* v. *Anthem Health Plans, Inc.*, 266 Conn. 12, 29–30, 836 A.2d 1124 (2003). We have appellate jurisdiction, however, because it is well established that "appeals from interlocutory orders may be taken pursuant to § 52-265a." *Foley* v. *State Elections Enforcement Commission*, 297 Conn. 764, 767 n.2, 2 A.3d 823 (2010).

[2] The Restaurant Law Center filed an amicus brief in support of the defendants' position, and the Connecticut Employment Lawyers Association filed an amicus brief in support of the plaintiff's position.

[3] Section 31-62-E4 of the Regulations of Connecticut State Agencies, which was repealed this year; see footnote 12 of this opinion; provided: "If an employee performs both service and non-service duties, and the time spent on each is definitely segregated and so recorded, the allowance for gratuities as permitted as part of the minimum fair wage may be applied to the hours worked in the service category. If an employee performs both service and non-service duties and the time spent on each cannot be definitely segregated and so recorded, or is not definitely segregated and so recorded, no allowances for gratuities may be applied as part of the minimum fair wage."

[4] There are six Chip's restaurants in Connecticut, located in Trumbull, Fairfield, Orange, Wethersfield, Southbury, and Southington. Each Chip's restaurant is operated by a separate limited liability company. Those limited liability companies are not named as defendants in this action.

[5] Most of the restaurants' side work lists were included as exhibits attached to the server declarations accompanying the plaintiff's motion for class certification.

[6] General Statutes § 31-68 (a) provides in relevant part: "If any employee is paid by his or her employer less than the minimum fair wage or overtime wage to which he or she is entitled under sections 31-58, 31-59 and 31-60 or by virtue of a minimum fair wage order he or she shall recover, in a civil action, (1) twice the full amount of such minimum wage or overtime wage less any amount actually paid to him or her by the employer, with costs and such reasonable attorney's fees as may be allowed by the court, or (2) if the employer establishes that the employer had a good faith belief that the underpayment of such wages was in compliance with the law, the full amount of such minimum wage or overtime wage less any amount actually paid to him or her by the employer, with costs and such reasonable attorney's fees as may be allowed by the court. . . ."

[7] The trial court granted the plaintiff's motion to strike some of the defendants' special defenses, including the special defense that less than 20 percent of the servers' time was spent performing side work, rendering the utilization of the tip credit permissible under federal and state labor regulations. This decision is not at issue in this appeal.

[8] Both the plaintiff and the defendants filed motions for summary judgment prior to the trial court's class certification decision. These motions are currently pending.

[9] We discuss the trial court's decision in two parts in order to best accommodate the varying legal standards applicable to our review of the trial court's class certification decision. See *Standard Petroleum Co.* v. *Faugno Acquisition, LLC*, supra, 330 Conn. 51 ("[w]hile our review of the legal standards applied by the [trial] court and the court's other legal conclusions

is de novo . . . the [trial] court's application of those standards to the facts of the case is again reviewed only for abuse of discretion" (internal quotation marks omitted)). In part II of this opinion, we first discuss the plaintiff's underlying claim and the trial court's application of the legal standard under de novo review; in part III of this opinion, we analyze the trial court's application of that legal standard under an abuse of discretion review.

[10] The plaintiff also contends that the defendants did not properly preserve this argument before the trial court. We disagree. The defendants repeatedly requested that the trial court articulate the meanings of service and nonservice during the hearing on class certification. This adequately raised the issue. See, e.g., *MacDermid, Inc.* v. *Leonetti*, 328 Conn. 726, 738 n.7, 183 A.3d 611 (2018) (concluding that defendant preserved defense because it could be inferred from his motions and because "the sine qua non of preservation is fair notice" to trial court and to parties (internal quotation marks omitted)). Additionally, the defendants immediately appealed from the class certification decision. As a result, there was no occasion, and no additional necessity, for the defendants "to challenge those findings" before the trial court.

[11] A tip credit allows "employers [to] take a credit for tips received by a tipped employee for up to a stated percentage or portion of the minimum wage." J. Lockhart, Annot., "Tips as Wages for Purposes of Federal Fair Labor Standards Act," 46 A.L.R. Fed. 2d 23, 40, § 2 (2010).

[12] We note that our legislature recently enacted legislation requiring the department to repeal § 31-62-E4 of the Regulations of Connecticut State Agencies and to adopt regulations in accordance with the 80/20 rule. See Public Acts, Special Sess., July, 2019, No. 19-1, § 5 (Spec. Sess. P.A. 19-1) ("[r]egulations adopted pursuant to this section shall be . . . [i]n accordance with the Fair Labor Standards Act, 29 [U.S.C. §] 203 (m) (2) and 29 [C.F.R. §] 531.56 (e), as interpreted by [§] 30d00 (e) of the federal Department of Labor's Field Operations Handbook, prior to November 8, 2018, which was previously referred to as the '80/20 rule' "). Although Spec. Sess. P.A. 19-1 was signed by the governor on January 6, 2020, after the parties had submitted their briefs to this court, the matter was discussed during oral argument before this court. The defendants stated that the recent legislation does not render the case moot but that it does have an impact on pending cases, as it added requirements for class certification. The plaintiff agreed that the repeal of § 31-62-E4 does not affect the present case and that the new class action requirements of Spec. Sess. P.A. 19-1 do not change the plaintiff's burden in the present case. If there was a remand, however, the plaintiff would be bound by the new class action rules.

As the legislation does not retroactively repeal § 31-62-E4, we conclude that Spec. Sess. P.A. 19-1 does not impact our analysis in the present case. Compare Spec. Sess. P.A. 19-1, § 5 ("Not later than April 1, 2020, the Labor Commissioner shall post on the eRegulations System a notice of intent to adopt regulations . . . concerning employees who perform both service and nonservice duties and allowances for gratuities permitted or applied as part of the minimum fair wage pursuant to section 31-60 of the general statutes. . . . Such notice shall also provide for the repeal of section 31-62-E4 of the regulations of Connecticut state agencies *upon the effective date of regulations adopted pursuant to this section*." (Emphasis added.)), with Public Acts 2019, No. 19-198, § 7 ("(*Effective from passage and applicable to actions pending on or filed on or after said date*) Notwithstanding the provisions of chapter 54 of the general statutes, section 31-62-E4 of the regulations of Connecticut state agencies is repealed." (Emphasis in original.)).

[13] See *Stevens* v. *Vito's by the Water, LLC*, Superior Court, judicial district of Hartford, Docket No. CV-15-6062506-S (November 9, 2017) (65 Conn. L. Rptr. 430, 432–33) (considering examples of service and nonservice duties in department issued guidance document and concluding that plaintiff demonstrated that "majority" of side work was nonservice); see also *Labor Dept.* v. *America's Cup*, Superior Court, judicial district of Hartford, Docket No. CV-92-0516750 (April 21, 1994) (11 Conn. L. Rptr. 379, 380–81) (determining whether bartenders are service or nonservice employees under department's regulations).

[14] The plaintiff interprets "nonservice" to include all side work tasks that a server performs away from the tables and booths. The defendants contend that § 31-62-E4 of the Regulations of Connecticut State Agencies does not actually distinguish between types of duties but, instead, refers to different occupations within the restaurant industry, and, therefore, "the intent of the regulation was not to regulate the assignment of tasks . . . ." Alterna-

tively, they contend that all of the side work tasks alleged by the plaintiff are incidental to service, and, therefore, taking the tip credit was permissible under the regulation.

[15] "Because our class certification requirements are similar to those embodied in rule 23 of the Federal Rules of Civil Procedure, and our jurisprudence governing class actions is relatively undeveloped, we look to federal case law for guidance in construing the provisions of Practice Book §§ 9-7 and 9-8." (Footnote omitted.) *Collins* v. *Anthem Health Plans, Inc.*, supra, 275 Conn. 322–23.

[16] Under federal law, collective actions seeking recovery for an employer's improper use of the tip credit are frequently brought in federal court pursuant to the FLSA. See, e.g., *Schaefer* v. *Walker Bros. Enterprises, Inc.*, 829 F.3d 551, 553 (7th Cir. 2016); *Fast* v. *Applebee's International, Inc.*, 638 F.3d 872, 876 (8th Cir. 2011), cert. denied, 565 U.S. 1156, 132 S. Ct. 1094, 181 L. Ed. 2d 977 (2012).

[17] The trial court did state during the hearing on class certification that it "would have to presume the plaintiff's arguments or claims are true" and that the plaintiff's definition of nonservice is correct for class certification. As we clarified previously in this opinion, that proposition is accurate to a point, as a trial court must "probe behind the pleadings before coming to rest on the certification question . . . and . . . certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of [r]ule 23 (a) have been satisfied." (Internal quotation marks omitted.) *Comcast Corp.* v. *Behrend*, 569 U.S. 27, 33, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013). In the trial court's memorandum of decision, the court considered the factual disputes identified by the defendants when concluding that it would not decide whether side work qualified as nonservice. We have concluded, however, that the trial court did not have to interpret the regulations in determining whether to certify the class, meaning that the trial court properly assumed the truth of the plaintiff's allegations, as there was no factual dispute that affected certification. Instead, the trial court properly deferred considering the merits of the plaintiff's legal theory until after class certification.

[18] Moreover, if, after deciding the parties' motions for summary judgment, the trial court's interpretation of the regulation narrows the plaintiff's claims to the point that class certification is no longer appropriate, the court has the authority to decertify or modify the class. See *Artie's Auto Body, Inc.* v. *Hartford Fire Ins. Co.*, 287 Conn. 208, 235–36, 947 A.2d 320 (2008) ("in the event that circumstances change as discovery proceeds and the trial court determines that class certification is improper, it may issue an order modifying its prior certification order or decertifying the class altogether").

[19] The plaintiff's evidence lacks an affidavit dedicated to the Southington restaurant, although the plaintiff herself occasionally worked there. Nevertheless, Robertson, the current general manager at the Southington restaurant, did not indicate that Southington side work varied substantially from that at the other restaurants, so it is reasonable to assume that Southington operated in accordance with the general policy.

[20] The defendants did not argue before the trial court that whether the plaintiff was employed by the defendants affected her standing; instead, they argued that such an inquiry was relevant to the plaintiff's showing of numerosity. Nevertheless, we will review the merits of the defendants' argument.

Although the defendants have changed the focus of their argument on appeal to different Practice Book requirements, "[w]e may . . . review legal arguments that differ from those raised before the trial court if they are subsumed within or intertwined with arguments related to the legal claim raised at trial." *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 203, 982 A.2d 620 (2009). Additionally, "standing implicates the court's subject matter jurisdiction, [so] the issue of standing is not subject to waiver and may be raised at any time." *Equity One, Inc.* v. *Shivers*, 310 Conn. 119, 126, 74 A.3d 1225 (2013). Because the legal argument is a variation of one raised before the trial court and invokes the court's subject matter jurisdiction, we review the merits of the defendants' argument. Additionally, we note that the plaintiff did not object to our review on appeal.

[21] "Thus, both standing and mootness also frequently appear as threshold requirements for the maintenance of federal class actions and must be considered in addition to the requirements of [r]ule 23 when deciding whether a particular action may be certified." 7AA C. Wright et al., Federal Practice and Procedure (3d Ed. 2005) § 1785.1, p. 385.

[22] We note that the trial court may well subsequently determine that the

operational structure of the Chip's business renders it appropriate to divide the class into subclasses by restaurant location. See Practice Book § 9-9 (a) (4) ("[w]hen appropriate . . . a class may be divided into subclasses and each subclass treated as a class").

[23] "Administrative regulations have the full force and effect of statutory law and are interpreted using the same process as statutory construction, namely, under the well established principles of General Statutes § 1-2z." (Internal quotation marks omitted.) *Sarrazin* v. *Coastal, Inc.*, 311 Conn. 581, 603, 89 A.3d 841 (2014).

[24] Robertson testified that all servers (1) were trained according to the same training packet, and (2) performed side work on every shift. Throughout her depositions, she also detailed how specific tasks were performed away from the tables and booths.

[25] See *Corning Glass Works* v. *Brennan*, 417 U.S. 188, 196–97, 94 S. Ct. 2223, 41 L. Ed. 2d 1 (1974) ("the general rule [is] that the application of an exemption under the [FLSA] is a matter of affirmative defense on which the employer has the burden of proof").

[26] See *Haschak* v. *Fox & Hound Restaurant Group*, Docket No. 10 C 8023, 2012 WL 5509617, *5 (N.D. Ill. November 14, 2012) ("[the] [d]efendants' liability for the policy will be independent of the possibility that certain individual class members will be unable to recover because the time they spent performing tasks mandated by the otherwise improper policy may happen to prove de minimis" (emphasis omitted)).

[27] We note that, if the court determines, after defining nonservice during the summary judgment proceedings, that there are too few qualifying tasks to support predominance, the court may decertify the class.

[28] We are also not persuaded that the trial court failed to define the class. The trial court's decision clearly states that it is certifying the class, as requested by the plaintiff: "All individuals employed as [s]ervers at any Connecticut Chip's Family Restaurant from October 25, 2015, until March 1, 2018." (Internal quotation marks omitted.)

[29] We note that a class definition mentioning the six Chip's restaurant locations would be more specific, and the trial court may deem it advisable to amend the definition accordingly on remand. See *Rivera* v. *Veterans Memorial Medical Center*, 262 Conn. 730, 744, 818 A.2d 731 (2003) ("it is within the purview of the trial court to revisit the issue of class certification, and, if circumstances require, alter the definition of the class as developments dictate").